## WARD *v.* DE YOUNG.

1. NEGLIGENCE — PERSONAL INJURIES — HIGHWAYS AND STREETS—
   WAY OF THE ROAD.
   > In an action for personal injuries caused by a collision at
   > a street intersection between defendant's truck and a
   > bicycle on which plaintiff was riding, admission by the
   > driver of the truck that he cut diagonally across the street
   > instead of keeping to the right of the center, *held*, aside
   > from the proofs submitted by plaintiff, sufficient to carry
   > the question of the negligence of defendant's driver to
   > the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   > Where plaintiff was at the very place he had a right to be,
   > and he testified that he looked to the left, then to the
   > right, and then ahead, and made every effort to get out
   > of the way after discovering the truck, but was unable
   > to do so, his contributory negligence was a question for
   > the jury.

3. EVIDENCE—ADMISSIONS—INSURANCE—PREJUDICE—TRIAL.
   > There was no reversible error in permitting plaintiff and
   > his wife to testify to conversations with defendant in
   > which he admitted his liability, although incidentally
   > the fact that defendant was protected by insurance was
   > brought out, where there was no improper argument based
   > on the incident, and no prejudice is reflected in the amount
   > of the verdict.

4. TRIAL — RESTRICTING CROSS-EXAMINATION AS TO PLAINTIFF'S
   PREVIOUS CONDITION—DISCRETION OF COURT.
   > Where the cross-examination of plaintiff as to his mental
   > condition before his injury covers many pages of the
   > record, and his previous condition, both physical and men-
   > tal, was fully placed before the jury, the claim of de-
   > fendant's counsel that he was restricted in his cross-
   > examination of plaintiff in this respect, *held*, insufficient
   > reason for reversal.

5. SAME—REMARK OF COURT—HARMLESS ERROR.
   > Where the trial court had fully and fairly instructed the
   > jury on the question of defendant's negligence, when, in

answer to an interruption of defendant's counsel the court made a remark directed to the question of counsel rather than to the evidence, such error is *held*, to be without prejudice, there being no claim that defendant's negligence was not fully established by the proofs.

6. SAME—CONTRIBUTORY NEGLIGENCE.
   *Held*, that the question of plaintiff's contributory negligence was fairly submitted to the jury.

Error to superior court of Grand Rapids; Dunham (Major L.), J. Submitted January 20, 1920. (Docket No. 45.) Decided April 10, 1920.

Case by Leonard Ward against Cornelius De Young for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Willis B. Perkins, Jr.,* for appellant.

*Charles E. Ward,* for appellee.

SHARPE, J. On September 18, 1918, plaintiff was riding a bicycle along the south side of Fulton street, in the city of Grand Rapids. Proceeding easterly, he came to the intersection of that street with Diamond avenue. When near the curb across the intersection, he collided with a truck belonging to defendant and driven by an employee named Martin De Young. The truck had been stopped on the north side of Fulton street, and about 100 feet east from the intersection. When started by the driver, it proceeded somewhat diagonally across Fulton street to the point where the collision occurred. The truck struck the rear wheel of plaintiff's machine, causing him to be thrown violently to the pavement and somewhat seriously injured.

The specific allegations of negligence of the defendant claimed by plaintiff and submitted by the trial court to the jury were:

"that defendant did not continue west from in front of the store where his truck was standing beyond the

center of Diamond avenue before turning to the south; that in turning to the south and passing diagonally across Fulton street, as the driver of defendant's automobile did, that he was violating all rules of the road, both the statute of this State and the ordinance of this city, and in violation of the common law rules that he should so use his automobile as not to injure the life or limb of any person; that in doing that, that the defendant was not in the exercise of due care and caution."

The plaintiff had verdict and judgment for $2,000, and the defendant brings error. There are many assignments, but they may be fairly grouped in the order in which we now consider them.

1. Negligence of the defendant. On direct-examination, the driver of the truck testified:

"When I started, I went on a kind of diagonal course south on Diamond. I should judge I had gone about 75 feet before I crossed the center of Fulton street, something like that. No, about 25 or 50 feet, something like that. From where my machine was standing when I cranked up last to the intersection of the curb on Diamond street with the south curb on Fulton street was 75 feet, I should judge. From where my machine was standing in front of Van Duzen's from the southeast corner of Diamond, it was somewhere in the neighborhood of 95 feet. I traveled 20 feet of this by pushing, and the remainder of it I went under the machine's power. In going towards the southeast corner of Diamond and Fulton streets, I went on kind of a diagonal course towards Diamond, south on Diamond. There was nothing that I know of in the street at the time between me and the bank on the southeast corner of Fulton street or between me and two or three hundred feet west of that bank; I would have seen it if it had been there."

On cross-examination, he said:

"*Q.* You cut across the corner of that street, didn't you?

"*A.* I did some.

"*Q.* Did you know it was your duty to look for something there?

"*A.* Why, yes.

"*Q.* Why didn't you?

"*A.* I don't know just how—　*　*　*

"*Q.* You were familiar with this corner?

"*A.* Yes, sir.

"*Q.* Stores all around there?

"*A.* Yes, sir.

"*Q.* And at times there is lots of traffic on that street?

"*A.* There is at times.

"*Q.* And you knew what your duty was, didn't you?

"*A.* Yes, sir.

"*Q.* You knew it was to keep to the right-hand side of the street?

"*A.* Yes, sir.

"*Q.* And you knew it was your duty when you turned a corner to keep to the right-hand of the intersection, that is, the center of the intersection?

"*A.* Yes, sir.

"*Q.* Knew that was your business?

"*A.* Yes, sir.

"*Q.* You deliberately violated your duty, didn't you?

"*A.* Why, I did, yes."

Aside from the proofs submitted by plaintiff, we think the above testimony of defendant's employee carried the question of his negligence to the jury.

2. Negligence of the plaintiff. Plaintiff testified that, as he approached the intersection, he looked to the left, then to the right, and then ahead, and did not see the truck until it was so close to him that, notwithstanding he made every effort to get out of its way, he was unable to do so. He was entitled to have his wheel at the very place at which the collision occurred. Whether or not he did what a reasonably prudent person would do under the circumstances to avoid the collision, was a question for the jury.

3. Admission of testimony. Complaint is made that plaintiff and his wife were permitted to testify to conversations with defendant in which the statement was made by him that he was protected by indemnity in-

surance. It is insisted that this fact was injected into the record for the purpose of creating a prejudice in the minds of the jury and that they were influenced thereby. If counsel's claim in this respect be well founded, a reversal must be had under the repeated rulings of this court. *Peter* v. *Railway Co.,* 121 Mich. 324 (46 L. R. A. 224) ; *Hillman* v. *Railway,* 137 Mich. 184; *Kerr* v. *Manufacturing Co.,* 155 Mich. 191; *Hughes* v. *City of Detroit,* 161 Mich. 283; *Morrison* v. *Carpenter,* 179 Mich. 207 (Ann. Cas. 1915D, 319) ; *Sherwood* v. *Babcock,* 208 Mich. 536.

It is, however, the claim of the plaintiff that the record discloses no such intent, that the objectionable statement was a part of a conversation which plaintiff was entitled to have considered by the jury, tending to show an admission of liability on the part of defendant.

To maintain his suit, plaintiff was required to prove three facts: *first,* that the defendant was the owner of the automobile truck by which he was injured; *second,* that his injury was due to the negligence of the driver of the truck; and, *third,* that he was himself free from contributory negligence. The plea was the general issue, thus putting plaintiff to his proofs on these several requirements. He also sought to explain the delay in bringing suit, his injury having occurred on September 18th and his declaration not having been filed until April 11th of the following year.

He sought to establish the first and second of these facts by the admissions of the defendant. He had been informed that defendant called at his home while he was confined to his bed and talked with his wife about the matter. When able to go out, he went to defendant's store to see him about it. As to what then occurred, plaintiff testified:

"*Q.* You had been informed he had been there?

"*A.* Yes, sir.

"*Q.* And said certain things?

"*A.* I was interested in what he said and I went over to ask him personally about what he talked about when he was at our house, because he didn't come when I could talk with him. So afterwards, I went over to his store and asked him if the insurance company was going to settle."

An objection being made, plaintiff's counsel said:

"I want the talk between him and Mr. De Young at that time.

"*Q.* I will ask you to tell the conversation between you and Mr. De Young."

On objection again being made, plaintiff's counsel said:

"It is part of an admission of liability here when we get to it, I think."

After discussion, during which the jury were excused, the court permitted the witness to proceed, and he said:

"I asked him if he told my wife that the insurance company was going to send its agent to our house and arrange to settle for the damages that Mr. De Young had done me. He said that he had talked with the insurance agent about it, and had told him that his driver had cut across the corner, instead of going around it the way he ought to, and that he thought that they were liable—that he was liable, and that they were, too, and that they would have to settle it. He said that he told them that they ought to come up to see me and settle the case and he said that they had promised to come up within a week. He had seen them the day before. I talked with him, and they had promised at that time to come up within a week to settle the case so that we wouldn't have to try it. * * *

"*Q.* Did you tell Mr. De Young, in the second talk, why you came to see him?

"*A.* I did.

"*Q.* Tell us what you said to him and what he said to you.

"*A.* Why, I told him that the reason I had come to see him was that we had waited for a settlement and he promised that the insurance company was going to make a settlement, but they hadn't come near us, and I told him the reason that I had come to see him was to find out whether they were going to dispute their liability or not at the trial and I said if they expected to dispute their liability on the trial we would start suit immediately because one of our chief witnesses was practically on his death bed, and we would not be able to get his testimony if we postponed the suit any longer and—he said that they did not intend to dispute their liability on the trial, and if I would wait just another week or two the thing would be all settled up.

"The suit was not settled.

"*Q.* At that time did he say anything more about how the boy drove across the corner there?

"*A.* Yes, sir; he said—I talked with him again on different occasions, and he was convinced that his driver was in the wrong, that he cut diagonally across the corner instead of going around the center of the street, and that he and the insurance company were liable for damages."

The plaintiff's wife, after stating that defendant had called at their home, was permitted to testify:

"*Q.* You say he came there several times?

"*A.* Yes.

"*Q.* I wish you would tell us what he said and who would come to see him?

"*A.* He said the insurance man would be up to see him.

"*Q.* Up to see Leonard?

"*A.* Yes.

"*Q.* How long after the accident was that?

"*A.* Why, it was just a few days, he was there several times and told me that."

The defendant, when called as a witness in his own behalf, denied that he had ever had any conversation with plaintiff or his wife in which he admitted liability. On counsel for plaintiff pressing him, he ad-

mitted that he had, in substance, made the statements as claimed by them.

There is no allusion to the insurance in the opening statement of plaintiff's counsel, which appears in full in the record, nor is there any claim that he said anything about it in his closing argument. The court instructed the jury:

"Gentlemen, I desire that you give particular attention to what I am about to say to you. One or more of the witnesses in detailing a conversation with the defendant, Cornelius De Young, made some reference to what such witness claimed to have been talked on the part of the defendant with reference to some insurance company. I do not recall exactly what his testimony was, but I desire to say to you that there is no insurance company a party to this suit. This is a suit between the plaintiff, Leonard A. Ward, and the defendant, Cornelius De Young, and you determine the liability or nonliability of the defendant in this case from the sworn testimony in this case as to just what occurred at the time of the accident, and you will dismiss from your mind entirely what was said with reference to any insurance company. You will determine this case in exactly the same way as if no reference had been made to any insurance company, and in disregard of anything that has been said in reference to any insurance company. * * *

"If you find that plaintiff is entitled to recover, he is entitled to recover just such a sum as will fully and fairly compensate him for all of his damages received in that collision, and you would not have to know anything about any insurance company. You do not determine it from any insurance policy or anything else in your jury room. Now, I want you to regard what I say on that, and let no juryman refer to anything concerning an insurance company, for you have nothing to do with it, you have no interest concerning it; it is a matter of no concern whatever to you."

In denying the motion made by defendant for a new trial, the trial judge, in disposing of the error claimed to have been thus committed, said:

"Now, I have said there was no inflammatory or prejudicial argument made by plaintiff's counsel. No argument was made by him that could possibly have prejudiced or intended to prejudice the jury. The size of the verdict, two thousand dollars, to my mind is conclusive that the jury were in no manner improperly influenced in reaching the verdict against defendant, or in determining the amount of damages to which the plaintiff was entitled."

The injuries which the plaintiff sustained were serious and painful. He was unconscious when taken home, and remained so until the next day. He did not recognize the presence of the doctor until the fourth day. He was confined to his bed for nine days, during which time he suffered much. He was affected with dizziness for a considerable time, falling downstairs five or six weeks after his injury on account thereof. Dr. Tuttle, who attended him, diagnosed his trouble as partial paralysis, caused by a fissured fracture of the skull. He testified that there was much danger of a recurrence of the paralytic condition; that, in his opinion, "this was a serious injury and that it is a permanent one."

The purpose of a suit at law is to secure a fair trial of the issues presented before an impartial jury. To effectuate such purpose, the trial court should exclude all immaterial and irrelevant matter. If it becomes apparent to this court on appeal that counsel has sought to obtain an undue advantage by injecting into the record matters alien to the issue and of a nature likely to influence the jury to act other than impartially, and it is manifest from a consideration of the entire record that the verdict probably reflects the effect of such erroneous conduct, a reversal will be granted. We have quoted from the record at length and summarized the testimony as to plaintiff's injuries. We think there is much merit in the contention of plaintiff's counsel and the finding of the trial court in denying

· the motion for a new trial that the verdict in no way reflects any prejudice on the part of the jury. The testimony tending to establish defendant's negligence and plaintiff's lack of contributory negligence was of such a character as may be said to fairly negative any inference that the verdict in favor of plaintiff was in any way affected by prejudice or the consideration of the fact that defendant was protected by insurance. Neither can we find any indication that the amount allowed plaintiff was enhanced thereby.

Aside from these considerations, we are unable to say, after reading the entire record, that plaintiff's counsel was intentionally seeking to get the fact that such insurance was carried before the jury. The fact that a defendant is so insured should not render him immune from having his admissions used against him when favorable to plaintiff, and if, in placing before the jury a statement made by him, or conversation indulged in, which tends to show such admissions, it appears as a part thereof that he is so protected, he has only himself to blame therefor.

It is the claim of defendant's counsel that he was restricted in his cross-examination of plaintiff as to his mental condition before his injury. Such examination covers many pages of the record. The previous condition of plaintiff, both physical and mental, was fully placed before the jury. We find no sufficient reason for reversing the case for this reason.

4. Error in the charge. The court had fully and fairly instructed the jury on the question of defendant's negligence. In answer to an interruption of defendant's counsel, he said:

"If he went at a rate of speed of three miles an hour, and if you should find that that was not a safe rate of speed there in that business section of the city, then he would be negligent."

As is said by defendant's counsel, there was no evi-

dence that the street at the point was being used by any other persons than plaintiff and defendant's driver at the time. It is apparent, however, that this remark of the court was directed to the question propounded by counsel rather than to the facts as appeared in evidence. There is no claim made that defendant's negligence was not fully established by the proofs, and the error committed must be held to be without prejudice. The question of plaintiff's contributory negligence was, we think, fairly submitted to the jury.

We have given consideration to the other assignments of error and find in them no sufficient reason for disturbing the verdict of the jury.

The judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, and CLARK, JJ., concurred. BIRD, J., did not sit.