RUCKLICH *v.* AMERICAN CAR & FOUNDRY CO.

1. NEGLIGENCE—NEW TRIAL—EVIDENCE—GREAT WEIGHT OF EVIDENCE.
   In an action for damages to plaintiff's brick building, alleged to have been caused by a 6,000-pound hammer in defendant's factory across the street jarring the ground and causing a vibration resulting in the damage alleged, a verdict for plaintiff, *held*, not against the great weight of the evidence.

2. SAME—DAMAGES—EXCESSIVE VERDICT.
   A verdict for $2,500 cannot be said to be excessive, in view of the testimony of the architect of the building that he had examined it, and his estimate of the cost of repairing it exceeded $3,000.

3. TRIAL—VIEW OF PREMISES WITHIN DISCRETION OF COURT.
   The granting or refusing of a request for the jury to view the premises is a matter within the discretion of the court.

4. SAME—CONDUCT OF COUNSEL—PREJUDICE—VIEW OF PREMISES.
   Where plaintiff's counsel, in the absence of the jury, requested the court to permit the jury to view the premises, to which request defendant's counsel objected, and later plaintiff's counsel called the court's attention to this request in the presence of the jury, and the court stated that he had "quite a well-settled rule" not to send a jury to view the premises unless by consent of counsel, and defendant's counsel said he was willing to leave it to the discretion of the court, and the court then denied the request, it cannot be said that the jury understood that defendant's counsel was the one that prevented them from viewing the premises, and defendant was so prejudiced thereby as to require reversal of the case.

5. EVIDENCE—JURORS—IMPEACHING VERDICT.
   Testimony by a juror, in support of a motion for a new trial, that the question of the refusal of the court to allow them to view the premises was discussed in the jury

room, and that he thought the jury were influenced thereby, *held*, incompetent.

6. TRIAL—INSTRUCTIONS—DAMAGES—EFFECT OF READING NEWSPAPER REPORTS.

In view of the explicit instructions of the court to the jury on the question of damages, it cannot be assumed that their verdict was not founded on the proofs submitted to them because they may have read or heard read a newspaper report which stated that the verdict on a former trial was for $2,800.

7. SAME—CONDUCT OF COUNSEL—PREJUDICE—INTENT.

An offer by plaintiff's counsel to testify to certain statements made by defendant's servant in charge of the hammer, rejected, after colloquy between court and counsel, on objection of defendant's counsel, cannot be said to have prejudiced defendant, in the absence of anything in the record indicating that said offer was made with any intent to do so; the test being as to whether counsel was intentionally seeking to inject into the record facts not competent as proof for the purpose of creating a prejudice in the minds of the jury and whether the jury were probably influenced thereby.

8. SAME—EXCLUSION OF EVIDENCE—CONDUCT OF COUNSEL.

Where plaintiff's offer to show the effect of the jarring caused by defendant's hammer on a house in the neighborhood was withdrawn on objection of defendant's counsel, the latter may not complain because like testimony offered by him after plaintiff had closed his case was rejected on objection of plaintiff's counsel, since counsel may not object to a certain line of testimony, and, after securing its exclusion or withdrawal, produce similar testimony on his client's behalf.

Error to Wayne; Mayne (Frederick W.), J., presiding. Submitted April 19, 1922. (Docket No. 81.) Decided June 5, 1922.

Case by Stephen Rucklich against the American Car & Foundry Company for damage to a building. Judgment for plaintiff. Defendant brings error. Affirmed.

*Angell, Turner & Dyer,* for appellant.

*Francis H. Warren,* for appellee.

SHARPE, J.  Plaintiff is the owner of a two-story hotel building erected in 1910, located at the corner of Medbury avenue and Russell street in the city of Detroit. The plant of the defendant is on the opposite or east side of Russell street.  It had been established many years prior to the erection of plaintiff's building, and was used in the manufacture of railway cars and other like equipment, necessitating the use of heavy hammers of various weights, which had been installed from time to time, the heaviest weighing 2,500 pounds.  In 1916, defendant entered into a contract to manufacture heavy artillery shells for the British government.  This necessitated the use of a 6,000-pound hammer, capable of striking a blow of 30,000 foot pounds.  This hammer was installed in December, 1916, and actual production by its use began shortly after January 1, 1917.  The contract was completed in March, 1917, but the hammer was "used intermittently until shortly after the close of the war in November, 1918."  Plaintiff claims "it probably hit a few times hard" during 1919.  Plaintiff's building was of brick construction, 30x62 feet.  He had it redecorated in 1916.  He claims that in November the pounding of the heavy hammer began to affect the walls of his building.  On February 12, 1917, he mailed a letter to the defendant, calling attention to the damage being done "by the continued pounding of machinery which is causing considerable cracking of plastering and is fast deteriorating my building."  That a few weeks later three men, representing the defendant, came to the building and looked it over, but they said nothing to him and "the pounding didn't stop."  That as a result of the vibration caused by the use of this heavy hammer his building was badly injured.

On December 7, 1917, plaintiff began this suit. His claim for damages to his business was withdrawn and that for injury to the building submitted to the jury, who found a verdict for him in the sum of $2,500. Defendant moved for a new trial for the reasons, among others, that the verdict was excessive and against the weight of the evidence. This motion was denied. The defendant here reviews the judgment entered on the verdict by writ of error.

1. Was the verdict against the great weight of the evidence? In discussing this question, counsel for defendant concede that plaintiff's building was "in a bad state of repair. The rear wall was cracked in one or two places, several cracks had appeared in the bar room floor, and the walls generally needed redecorating." It is their contention that this condition "was due to inherent defects in construction, and that in any event, whatever was the cause, it could not have been the operation of the hammer complained of." It seems also to be conceded that if plaintiff's building was damaged by the use of the 6,000-pound hammer, recovery may be had.

The plans and specifications for plaintiff's building were prepared by Joseph G. Kastler, an architect whose competency is not questioned. He did not superintend its erection, but says he "was called in by Mr. Rucklich once or twice toward the finish. I helped him out in the finish." He examined the building in 1916 or 1917 and again on March 22, 1919. On the latter date he made a report on its condition, which was admitted in evidence without objection. In this report he stated specifically the damaged condition of the walls, outside and inside, and the floors and ceilings of the rooms. The report concluded:

"The jarring caused by pounding will pulverize the mortar between bricks which makes it impossible to bind the brick together by pointing only. The cracks

in brick work are not in a dangerous condition if there is no more heavy pounding which would cause the building to shake."

He testified:

"A very heavy jarring or vibration of ground would produce the condition I found to exist."

On cross-examination he testified:

"I don't think that the pulverizing of the plaster and mortar was due to any cause other than a jar, because we have cracked walls sometimes and the joint is clean.    If there is a continuous vibration, it is pulverized.    *    *    *    I could not say that this condition was necessarily due to the operation of a steam hammer.    I would expect it but I could not say that; any other heavy jar would cause that; any condition that would jar the building."

He further testified that the jarring of a passing street car "would not crack it that much."    The plaintiff testified:

"I think about November some time they started pounding, jarring and shaking the building, and the building tried to crack, cracked walls outside and inside the place.    I wrote them a letter to come and see it or stop.    I couldn't sleep nights.    They didn't pay any attention for a long time."

Several witnesses called by plaintiff testified that while in the hotel they heard the noise of the pounding and noticed the shaking of the building produced thereby.    The constant use of the hammer from January to March, 1917, and its occasional use thereafter were admitted by defendant's chief engineer.

Defendant's claim is that the condition of the building was due to improper construction, particularly in the matter of drainage, and that under the proofs the noise and jarring were shown to have occurred at times when the heavy hammer was not being used. There was testimony to support such claim.    A question for the jury was thereby presented.    We are un-

able, as was the trial court in denying defendant's motion for a new trial, to say that the verdict was so contrary to the great weight of the evidence as would justify a court in setting it aside for that reason.

2. Was the verdict excessive?   Mr. Kastler, the architect, testified that soon after making his report in 1919 he made estimates of the cost of repairing the building and they exceeded the sum of $3,000. Several men engaged in construction and decorative work were examined.   While their testimony is in the nature of estimates, we think it furnished sufficient support to justify the verdict of the jury.   After reading the entire record, we are not impressed that the verdict is so excessive that it should be set aside.

3. Errors during the trial.   (a) Before plaintiff rested, his counsel, in the absence of the jury, requested the court to permit the jury to view the premises, to which request defendant's counsel objected.   It appears that such permission was granted on a former trial and a verdict for plaintiff for $2,800 set aside on account of improper conduct of the plaintiff in treating the jury to cigars when such view was being had.   The court took the request under advisement.   Later, and before the close of the proofs, plaintiff's counsel, in the presence of the jury, called attention to this request.   The trial court stated that he had "quite a well-settled rule" not to send a jury to view the premises unless by consent of counsel. He further stated that the injuries complained of occurred nearly four years before the trial, that there had necessarily been changes in the building, that the conditions had all been testified to and that "unless by consent of counsel I will not send them out."   Defendant's counsel then said:

"My position is this: I am willing to leave it to the discretion of the court.   I do not wish to consent or object on the record.   It is a matter which is

peculiarly within your honor's province to determine, and I am willing to be guided by your judgment,"

whereupon the court denied the request. Defendant's counsel urge that the jury must have understood that he "was the one which prevented them from viewing the premises" and that serious prejudice resulted therefrom. This alleged error was considered by the court when the motion for a new trial was submitted. In support of it, defendant called one of the jurors, who testified that this question was discussed in the jury room, and that he thought the jury were influenced thereby. This testimony was clearly incompetent. *Spencer* v. *Johnson*, 185 Mich. 85, and cases cited. The fact that plaintiff's counsel first made the request in the absence of the jury very clearly indicates that it was made in good faith and not for the purpose of creating a prejudice against the defendant. The granting or refusing of it was a matter in the discretion of the court. *Jaddatz* v. *Lumber Co.*, 194 Mich. 273. We are not impressed that what was said by counsel and the court caused any such serious prejudice against the defendant as would justify a reversal of the case.

It is also urged that the jury had access to and read or heard read a newspaper report of the trial, in which it was stated that the verdict on the former trial was $2,800. Such incidents in the trial of causes, unless juries are to be kept closely confined, are bound to occur. It is belittling their intelligence to assume that their verdict was not founded on the proofs submitted to them, particularly in view of the explicit instructions as to damages given them by the court.

(*b*) Plaintiff's counsel was sworn and offered to testify to certain statements made by one Lempke, conceded by defendant to have been in charge of the heavy hammer at defendant's plant. He urged that

such statements were admissible as against defendant. After quite a lengthy colloquy between court and counsel, during a part of which the jury were excused, the objection of the defendant was sustained by the court. The test as to such matters, as we said in *Ward* v. *De Young*, 210 Mich. 67, is whether counsel was intentionally seeking to inject into the record facts not competent as proof for the purpose of creating a prejudice in the minds of the jury and whether the jury were probably influenced thereby. We find nothing in the record to indicate such an intent on the part of plaintiff's counsel, nor can we infer that what occurred caused prejudice against the defendant.

(c) Plaintiff's counsel sought to show by a witness the effect of the jarring caused by defendant's hammer on her house. To this defendant's counsel objected, saying:

"If we could enter into a consideration of other people's buildings we might bring in 75 or 100 different people who own property in the neighborhood, one testify one way and another another; in other words, it is an entirely extraneous inquiry and incompetent."

The question was then withdrawn. Afterwards, defendant's counsel called two witnesses and propounded to them substantially the same question. Error is assigned on the action of the court in sustaining objections thereto. We think no error was committed in doing so. Plaintiff's counsel had closed his case and presumably excused his witnesses called to so testify. Defendant's counsel may not object to a certain line of testimony as inadmissible by plaintiff and after securing its exclusion either by the action of the court or counsel produce similar testimony on its behalf. 22 C. J. p. 198.

Other questions, involving the amendment of the declaration without granting a continuance, the competency of testimony in which witnesses used the ex-

pression "I guess," and the admission of certain testimony objected to, discussed by counsel, have been carefully considered.   The record presents disputed questions of fact, which were fairly submitted to the jury in instructions of which no complaint is made.   We find no reversible error.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.