O'CONNOR, Respondent, vs. SIOUX FALLS MOTOR COMPANY, Appellant.

(232 N. W. 904.)

(File No. 6664. Opinion filed November 10, 1930.)

*Kirby, Kirby & Kirby,* of Sioux Falls, for Appellant.

*M. G. Luddy,* of Sioux Falls, for Respondent.

MISER, C. A car owned by appellant, Sioux Falls Motor Company, and driven by Emil Paulson, a mechanic employed by that company, ran into and overturned a car driven by Tom Winkler wherein respondent O'Connor was riding as a gratuitious passenger. Respondent alleged the negligence of appellant's employee, acting within the scope of his employment, and asked damages therefor. Appellant made a general denial, and alleged that,

if respondent suffered any injury, it was caused by her own contributory negligence. At the trial, in an effort to prove that Paulson was acting within the scope of his employment, respondent attempted to introduce in evidence Exhibit C. It was not admitted in evidence, but appellant assigns as prejudicial misconduct the efforts of respondent's counsel to have it admitted. Exhibit C was produced in court in response to a subpoena duces tecum issued to one Scallan, an officer of Western Surety Company. It was a report of the accident, purporting to be signed by one Evans, who at the time of the accident was president of the defendant company. It was made on a printed form of that surety company and stated thereon a file number and a policy number. Therein was the statement: "Winkler's car was struck on rear fender by Paulson, did not see Winkler in time to stop." Also the question: "What was auto being used for at the time of accident?" was followed by the hand-written answer: "Going after a prospect buyer." On the back of the report, under the heading "Statement of driver," was the following handwriting: "At about 7:30 P. M. was driving company car, going after Mike Kellie, a prospect, to bring him down to Sioux Falls Motor Company. Was going up Sixth Street hill, and accident occurred at intersection of Sixth Street and Duluth. I did not see Winkler's car in time to stop, but he was ahead of me at intersection. I was not going over fifteen miles per hour when accident occurred. Signed Emil Paulson." Inasmuch as defendant's witnesses testified positively that Paulson had no authority to use the car, and that his employment with the company was that of a repair mechanic only, the zeal with which plaintiff's counsel, Luddy, sought the admission of the exhibit and defendant's counsel, Thomas H. Kirby, its exclusion, is understandable. Although defendant's counsel won the point, plaintiff's counsel won the verdict of $1,000, a verdict not excessive under the evidence. Appellant assigns as prejudicial misconduct the zealous efforts of respondent's counsel to secure the admission of Exhibit C. Appellant could not complain of any lack of either zeal or skill on the part of its own counsel. Its answer was a general denial, without mention of scope of employment. Its counsel made no opening statement, although the plaintiff's counsel moved that he be compelled to do so. Although the subpoena duces tecum to Scallan required him to give evidence on the part of the plaintiff,

when he was placed upon the witness stand and plaintiff's counsel demanded of him the production of the papers, he replied that he had given them, the evening before, to defendant's counsel. Defendant's counsel, himself an officer of the surety company, then produced them.

At the time of the trial, Evans, by whom—according to Exhibit C—that report was made, was in Texas. Crowley, defendant's vice president, and Southern, its sales manager, testifying in defendant's main case that Paulson had no authority to use the car, denied on cross-examination that Exhibit C was in Evans' handwriting and all other knowledge of its origin. Paulson, the driver of defendant's car and the purported signer of the statement on the back of Exhibit C, was available to defendant as a witness while proving its defense. Defendant, however, did not put him on the stand and rested just before the noon recess. Before the jury returned after the noon recess, a subpoena for Paulson, issued at the request of plaintiff's counsel, was handed to the sheriff, who could not find Paulson before the conclusion of the rebuttal testimony of four witnesses. Crowley testified he saw Paulson just before the noon recess.

When defendant had rested after introducing evidence in denial of Paulson's authority to use the car and disclaiming all knowledge of Exhibit C, plaintiff sought in rebuttal to discover how it came to be in the surety company's files, bearing file No. Ho. 4250, policy No. 80L209. He called the president of the surety company as a witness. He, as well as Scallan, who produced Exhibit C, denied any knowledge as to who prepared it and how it came to be in the surety company's files. He testified that, if any one connected with his company would know the source from which the instrument was received, it would be a Mr. Sequin. Mr. Sequin was then somewhere between Sioux Falls and Minneapolis. He also testified that he doubted whether any of the other thirty persons employed by his company would be able to tell from what source Exhibit C came. The president of the surety company was told by plaintiff's counsel that Exhibit C was produced by Mr. Scallan, an officer of his company, and by him identified as part of the records and files in his possession, and was asked whether or not Exhibit C was a part of the records and files of the office of the company of which he was president. He replied: "It is not

identified in any way, and I do not know." He was then asked: "Are you unable to answer the question even if you assume the matters stated in my question to be true?" He answered: "Assuming that, I would say yes." Thereupon, after testifying that he did not know from what source the instrument was received, he was asked: "The instrument, Exhibit C, regardless of the source from which it was received, was accepted and filed in your office, as an official report, was it not?" To which the witness answered: "Assuming the same as before, I will say yes."

At the conclusion of the trial, the authorship of Exhibit C was no less a mystery than at its beginning. Three witnesses connected with the motor company, including its manager, and three witnesses connected with the surety company, including its president, denied any knowledge of its origin; yet the expense of repair of the Winkler car was charged to the surety company, and Exhibit C bore a policy and a file number and was produced by an officer of the surety company under subpœna.

Although the foregoing is an incomplete narration of the trial happenings which appellant assigns as prejudicial misconduct on the part of respondent's counsel, it presents the matter sufficiently for the purpose of this opinion. When respondent's counsel was examining the jurors, he inquired whether any of them were employed by or held stock in the Western Surety Company. Objection thereto having been sustained, respondent's counsel did not thereafter allude to that surety comuany by name; but it would be placing a very low estimate on the intelligence of the jurors to say that they did not at least surmise that defendant carried insurance.

In his brief, counsel for appellant says: "The Oregon court in Vasquez v. Pettit, 74 Or. 496, 145 P. 1066, Ann. Cas. 1913A, 439, paints an exact picture of the case at bar when it states: "In the trial of this cause there appears to have been an intent at every convenient opportunity to establish the fact that the defendant was protected from liability to respond in damages for injuries to his employees by a policy of indemnity insurance. As such proof, in personal injury cases, might have a tendency to render the jurors careless as to the amount of their verdict, the rule is universal that a wilful attempt to establish such fact constitutes reversible error.' " After quoting to the same effect Trent v. Lechtman Printing Co.,

141 Mo. App. 437, 126 S. W. 238; Mithen v. Jeffery, 259 Ill. 372, 102 N. E. 778; Carter v. Walker (Tex. Civ. App.) 165 S. W. 483; Ross v. Willamette Val. Transfer Co., 119 Or. 395, 248 P. 1088, appellant quotes from Ryan v. Trenkle, 199 Iowa, 636, 200 N. W. 318, 320, as follows: "It is quite apparent that the verdict was influenced by extraneous matter. One of such extraneous matters was the diligent suggestion, by examination of jurors and otherwise, that the damage sued for had been insured against. The impression thus conveyed to the jury naturally was that the action was a mere method of collecting insurance. This seems to be a growing practice of trial stratagem which is not calculated to secure a fair trial and which incurs the increasing disfavor of the courts." Assuming as true the statement in the closing sentence of that quotation, what is to be done about it? Appellant answers by quoting from Wagner et ux. v. Hazle, 215 Pa. 219, 64 A. 405, 407: "When an attorney in the trial of a cause willfully and intentionally makes an offer of wholly irrelevant and incompetent evidence, or makes improper statements as to the facts in his address to the jury, clearly unsupported by any evidence, which are prejudicial and harmful to the opposite party, it. is the plain duty of the trial judge, of his own motion, to act promptly and effectively by reprimanding counsel and withdrawing a juror and continuing the cause at the costs of the client. In no other way can justice be administered and the rights of the injured party be protected."

Counsel for respondent insists, however, that the contents of Exhibit C were such as to justify every effort made to secure its admission. Certainly it does not appear beyond doubt that counsel for respondent "willfully and intentionally" made "an offer of wholly irrelevant evidence." Moreover, counsel for appellant did not suggest before verdict that the trial court should inflict the punishment prescribed by the Pennsylvania court, that is, the continuance of the cause at plaintiff's cost. In view of the motion made by respondent's counsel when resting his case, he might have welcomed a continuance, even though penalized with costs. Counsel for respondent might have welcomed a continuance until he could take the testimony of Evans or Sequin or Paulson. This Exhibit C, dated two days after the accident, was evidently no dream child, even though its parentage was shrouded in mystery.

The question is not whether respondent laid a sufficient foundation for the admission of Exhibit C. It was not admitted, and respondent does not appeal. The question is, Was Exhibit C so clearly incompetent and irrelevant as to make the efforts of counsel to procure its admission prejudicial misconduct?

The decisions bearing on the question are reviewed in 56 A. L. R. 1418-1550 as an annotation to Jessup v. Davis, 115 Neb. 1, 211 N. W. 190. The following quotations from that annotation are supported by cases therein cited: "It may be said to be the universal rule that, subject to the exceptions and qualifications subsequently to be noted, evidence that the defendant in a personal-injury or death action carries liability insurance, protecting him from liability to third persons on account of his own negligence, is not admissible." 56 A. L. R. page 1419. But "the determination of the admissibility of any evidence depends upon whether it tends to prove an issue—whether it is relevant or material; if it is, it cannot be excluded on the ground that it may tend to prejudice the defendant because it tends to show that he carried liability insurance." 56 A. L. R. page 1433. "Thus, if it becomes a material issue for the plaintiff to prove that the truck which is alleged to have caused his injury belonged to the defendant, and was being used in his service, evidence is admissible of a report by the alleged owner to a casualty company, admitting that he owned the team, and the fact that it may thereby appear that defendant was insured does not render the statement incompetent." 56 A. L. R. page 1435, citing Sibley v. Nason, 81 N. E. 887, 196 Mass. 125, 12 L. R. A. (N. S.) 1173, 124 Am. St. Rep. 520, 12 Ann. Cas. 938. See, also, Wedge v. Gapinski, 177 Wis. 471, 188 N. W. 476, and particularly Harris v. Koenig Coal Co., 223 Mich. 683, 194 N. W. 511.

Here the report, purporting at least to be signed by the manager of defendant company, contained admissions that the driver was negligent and was then acting within the scope of his employment. The fact that the defendant in an automobile accident is insured against liability does not render him immune from having his admissions used against him, when favorable to the plaintiff, and if, in placing before the jury a statement made by him which tends to show such admissions, it appears as a part thereof that he is so protected, he has only himself to blame therefor. 56 A.

L. R. 1448, note; Roche v. Llewellyn Iron Works Co., 140 Cal. 567, 74 P. 147; Anderson v. Duckworth, 162 Mass. 251, 38 N. E. 510; Ward v. De Young, 210 Mich. 67, 177 N. W. 213; Hill v. Jackson (Mo. App.) 272 S. W. 105. After summarizing many cases, the annotator at 56 A. L. R. 1484 says: "The decisions cited in the preceding divisions of this annotation all assume that the plaintiff's counsel must act in good faith when he desires to take advantage of an exception to, or limitation upon, the general rule that such matter is inadmissible; that he must not attempt to use these exceptions and limitations as a subterfuge to enable him to inject into the case the fact that the defendant is insured."

Applying the foregoing we are unable to discover the prejudicial misconduct of which appellant complains. Other errors have been assigned. These have been examined, but no reversible error found therein. The Judgment and order appealed from must therefore be, and they are, affirmed.

BROWN, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.