### MIDLAND VALLEY R. CO. v. TOOMER.

No. 7864—Opinion Filed Jan. 23, 1917.

(162 Pac. 1127.)

**1. Negligence — Carriers — Imputed Negligence—Passenger of Licensee.**

Where a passenger is traveling upon a motor car operated over the track of the railway company by license implied or express, the negligence of the operator of the motor car cannot be imputed to such passenger in an action against the railway company for injury received while the motor car was on the track of the defendant railway company. The rights of a passenger upon a motor car operated on the track of a railway company by license is not measured by the same rule that would measure the rights between the licensee and railway company.

**2. Carriers—Injury on Track—Licensee—Liability.**

By asking for and receiving its franchise a railway company comes under the obligation to answer in damages to every one who may be injured by any negligence in the use of privilege the railway company has received. If a railway company permits another to run a motor car upon its tracks, it is liable for any want of care in the operator of the motor car, and may be sued therefor as though said motor car were its own.

**3. Same.**

Whenever a railway company by long-continued silence and acquiescence leads the public to believe and to act upon the belief that any person or corporation assuming to exercise its franchises or any portion therof, with knowledge on the part of the officers, and agents of the company, has the consent of such railway company so to do it, may be compelled to respond in damages to third persons acting upon such belief in whose favor a cause of action may arise for injury, brought about at the particular time of the injury either by the immediate negligence of the company or by the negligent acts of those in whom the apparent authority existed to exercise the franchise or franchises. Such negligence and acquiescence of the company goes to the question of negligence as well as to that of agency.

**4. Same.**

A railway company cannot stand by and receive the benefits of having a motor car operated over its tracks, transporting passengers and carrying freight back and forth to the advantage of the company, and then in case of negligent injury to a passenger on such motor car while the same is on the tracks of the company charge the negligence of the operator of the motor car to the passenger injured.

**5. Carriers — Operation — License—Revocation.**

The mere driving of a spike in the switch connected with a track which has been used by implied license from a railway company by a motor car engaged in the business of hauling passengers and freight and which prevented the use of the track but a few days, unaccompanied by notice to the operator of the motor car or to the public, the track being used by the motor car continuously thereafter for months, would not of itself revoke a license once established, to use the track, especially in so far as the rights of passengers on such motor car are concerned.

**6. Instructions—Correctness.**

Instructions in the instant case examined, and held that the same fairly charge the law of the case, and that the court did not err in refusing to give special instructions requested by the defendant.

(Syllabus by Stewart. C.)

Error from District Court, Muskogee County; R. P. De Graffenreid, Judge.

Action by Robert Toomer, revived after his death in the name of John Benjamin Toomer, administrator, against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

O. E. Swan, for plaintiff in error.

James W. Cosgrove, and Guy F. Nelson, for defendant in error.

Opinion by STEWART, C. The parties will be designated as they were in the court below. The plaintiff, Robert Toomer, began his action against the defendant, Midland Valley Railroad Company, for damages on account of injuries alleged to be caused by negligence of defendant and resulting from a collision of a freight car of the defendant with a motor car operated upon the track of the defendant in the town of Warner in the state of Oklahoma; the plaintiff alleging that he was a passenger on said motor car, and because of the collision was thrown therefrom and permanently injured, being damaged in the sum of $2,950. The defendant answered by way of general denial and by further plea that the plaintiff, even if injured, as alleged, was guilty of negligence which directly and proximately contributed to the injuries. The cause having been submitted to a jury, a verdict was rendered for the plaintiff in the sum of $1,200. Motion for new trial was duly filed and overruled. The defendant, having excepted, appeals to this court. After judgment, the plaintiff died and the cause of action was revived in the name of John Benjamin Toomer, administrator of decedent's estate. The administrator is made defendant in error in this court.

The defendant in its brief urges 18 specifications of error, all of which may be epitomized under the following general heads: Specifications 1, 2, and 3 present the question of the sufficiency of the amended petition. Specifications 4 and 5 raise the question of the sufficiency of the evidence to sustain the verdict. Specifications 6 to 10, inclusive, contain alleged errors in each of 5 of the paragraphs in the court's charge to the jury. Specifications 11 to 16, inclusive, allege as errors the refusal of the court to give 6 separately numbered special instructions to the jury requested by the defendant. Specifications 17 and 18 allege as error the overruling of the motion for a new trial, and the rendering of judgment in favor of the plaintiff and against the defendant.

The evidence in this case shows that there had been formerly in operation a small railroad from the town of Warner to Webbers Falls, known as the Webbers Falls, Shawnee & Western Railroad Company; that said railroad company ran trains over its own tracks and up to the right of way of the defendant in the town of Warner, and, by arrangement with the defendant, ran its cars over a certain track belonging to the defendant and up to within 15 or 20 feet of the depot of the defendant in said town; that the Webbers Falls, Shawnee & Western Railroad Company was not a financial success, and was forced to discontinue business; that after said railroad discontinued business, one W. J. Maples began running a motor car such as are used on railroads from Webbers Falls to Warner, running over the track of the Webbers Falls, Shawnee & Western Railroad Company to the right of way of the defendant, and thence over the track of the defendant, formerly used by Webbers Falls, Shawnee & Western Railroad Company to the depot of defendant; that this conduct of Maples began in December, 1913, and continued to October or November, 1914; that said motor car met all the passenger trains of the defendant coming into the town of Warner, except one going out at about 11 o'clock in the day, and delivered passengers to the defendant and received passengers from the defendant, and also delivered freight to defendant and received same from defendant; that objection was never made by the defendant to W. J. Maples concerning the use of said track; that the use of the same was known to the superintendent of the railroad, to the roadmaster, the trainmen, the station agent, and to various other employes of the railroad; that the operation of such motor car and the carrying of passengers as well as freight was

generally known to the public, the patrons of the defendant and the public at large daily availing themselves of the transportation facilities offered, all without objection on part of defendant; that, however, about six weeks before the injuries complained of by the plaintiff, the switch connected with the track of defendant used by Maples was left open and one of the local trains of defendant ran through the switch; that the roadmaster notified the superintendent of the defendant and also caused the section foreman to spike the switch; that the spike, however, was removed shortly afterwards, it not be'ng shown who removed the same, and the motor car continued its operation over the defendant's tracks; that on or about the 17th day of July, 1914, the plaintiff had come from Muskogee to Warner over the line of defendant as a passenger, and had taken the motor car for the purpose of again becoming a passenger of defendant from Warner to Muskogee; that on this occasion on one of the tracks in the yard of defendant at Warner, a local train was standing and some switching was being done; that the motor car in which the plaintiff and others were passengers arrived and as usual was passing over the track of defendant toward the depot; that one of the box cars of the defendant ran against the corner of the motor car in question and threw the plaintiff violently from the motor car, causing him great physical injury, the evidence being that such injuries were likely permanent, and that the plaintiff was damaged thereby.

The petition, as amended, alleges a cause of action. The court did not err in overruling the demurrer thereto. The motion for judgment on the pleadings, and the objection to the introduction of any testimony, were properly overruled.

The next question to consider is whether or not under the law of this case the evidence is sufficient to sustain the verdict. The defendant has filed an exhaustive brief, in which it is contended that the plaintiff was a trespasser, and that the defendant owed him no duty except that due to a trespasser. Counsel for defendant urges that the facts do not show that Maples was a licensee, and that the injury was caused by the negligence of Maples which was imputable to the plaintiff. It is further argued that at most Maples was a bare licensee, and that the plaintiff occupied no other status than that of Maples.

It is the settled law of this jurisdiction that a license may be established by long-continued acquiescence, and where a railroad track has been used habitually by others not connected with the railroad for a long period of time without objection, it cannot be said that the railroad company is not bound to anticipate the presence of such persons on its track and to operate its trains with regard to the safety of those there by its license. Wilhelm v. M., O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088, L. R. A. 1916C, 1029; St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60. See, also, Barry v. Railroad Co., 92 N. Y. 290, 44 Am. Rep. 377; Bryne v. Railroad Co., 104 N. Y. 363, 10 N. E. 539, 58 Am. Rep. 512. But it is contended that the driving of the spike in the switch as matter of law operated to revoke the license, if any, to Maples. We do not think so; such act at most was but a fact to be considered in connection with all of the other facts and circumstances in the case in determining whether or not a license existed. In St. L. & S. F. R. Co. v. Hodge, supra, Mr. Justice Sharp, of this court, says in the syllabus:

"That children on some occasions had been warned not to take coal or play about the premises of the company did not absolve the company from its duty to exercise reasonable care in operating its trains in the yards, where it was shown that the former custom had not been discontinued."

The principle stated is authority for the establishment of license by acquiescence, and also sustains the view that a single act like the driving of the spike did not of itself revoke the license. The fact that Maples was never told to discontinue the use of the track, that the spike remained but a few days, and the motor car pursued its quondam course without objection, not only till the date of the injury, but for months afterwards, and that the public was not advised of a discontinuance of the license, tends to show, not only that the license was not revoked, but almost conclusively establishes such license. It may therefrom be considered as proved by the evidence that Maples was a licensee If the defendant owed the plaintiff no greater duty than was due to Maples, and plaintiff under the law was a mere licensee, we are of the opinion that the verdict of the jury would be sustained by the evidence. Judge Brett in Wilhelm v. M., O. & G. R. Co., 52 Okla. 317, 152 Pac. 1089, L. R. A. 1916C, 1029, lays down the rule as to the duty of a railroad to a licensee which has been followed since by this court:

"We think the sound and wholesome rule of law, humane and conservative of human life, is that, even though the person killed or injured is a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect against injuring him that is

commensurate with the probability that persons may be upon its track at that point."

Justices Sharp and Hardy in decisions of this court cited, supra, have pronounced the same rule. It follows, then, that even if the plaintiff was a mere licensee of the defendant, the jury having passed on the question of negligence as well as the damages sustained, and there being evidence reasonably supporting the verdict, we would be concluded, unless there are other reasons why same should be disturbed. But we would not pronounce the law correctly if we held the plaintiff's claim against the defendant should be decided upon the theory that he was a licensee. In our opinion, under no view of the case did he occupy such a status. He was not engaged in a joint enterprise with Maples, but was a passenger upon a car which the evidence shows was operated upon the defendant road by implied, if not by express, license.

In support of the proposition that a distinction is recognized as to the rights between the owner and the lessee or licensee and the rights between the owner and a third party, we quote from the opinion in Peters v. D & M. R. Co., 178 Mich. 481, 144 N. W. 827:

"The case of Fisher v. Thirkell, 21 Mich. 1, 4 Am. Rep. 422, and other cases are cited, and some of them are relied upon by each of the defendants. Those cases, involving only the rights of owner and licensee, are plainly not in point."

All of the authorities hold that, when a railroad company leases or contracts the use of its tracks to another and damages are suffered by third persons on account of actionable negligence on the part of either, both the lessor and the lessee are liable for such damages.

In Murray v. Lehigh Valley R. R. Co., 66 Conn. 512, 34 Atl. 506, 32 L. R. A. 539, the court said:

"A railroad corporation is a carrier of passengers by virtue of the franchise granted to it by its charter—a franchise intended to be used for the public good. By asking for and receiving the franchise, the corporation comes under the obligation to answer in damages to every one who may be injured by any negligence in the use of the privilege it has so received."

And further it is said:

"If a railroad company permits another company to run its trains upon its track, it is liable for any want of care of its lessee, and may be sued therefor, the same as though the trains were its own."

The following is from the syllabus in C. & E. I. R. R. Co. et al. v. Schmitz, 211 Ill. 446, 71 N. E. 1050:

"When an injury results from the negligent operation of a railroad, whether by the corporation owning it or by another corporation authorized to use its tracks, the company owning the road is liable."

And in Georgia Pac. R. Co. v. Underwood, 90 Ala. 49. 8 South. 116, 24 Am. St. Rep. 756, it is held:

"Where a railway company permits third persons to place loaded cars on a spur track, negligence of the servants of such third persons in placing cars so near the main line as to cause a collision is a negligence of the company."

It is held in Macon & Augusta R. Co. v. Mayes, 49 Ga. 355, 15 Am. Rep. 678, that where a railroad company permits other companies or persons to run cars on its road, it is liable for damages caused by their negligence. We quote at length from the body of said opinion:

"Hull & Co. were exercising the franchise granted by the Legislature to the Macon & Augusta Railroad—were running a steam car and tender, and carrying passengers over the road of defendant through the country. We are of the opinion that if this be so, third persons have a right to hold the railroad company responsible for any negligence of Hull & Co. or their agents. The running of cars drawn by steam through the country is a franchise, and unless granted by the Legislature. cannot legally be exercised. And if the railroad company to which the Legislature has granted this franchise permit others to use it, the company is responsible to the public for negligence of such persons. It is but a fair presumption that the Legislature, in granting such a franchise, looked to the capital of the company as a security that the franchise would not be abused. Upon any other view, the company might lease out its privilege to third persons, nonresident or not having property, so that the country would have no security against injuries done by the careless or even reckless use of the franchise. In our judgment, if a railroad company sees fit to permit another person or corporation to run steam cars over its road, it is liable to third persons for damages caused by the negligence of such persons or corporations, just as though the company had itself been running the cars.

"This is a new question here, and is to be decided rather upon principle than authority. It cannot, as it seems to us, be presumed that it was within the intent of the Legislature to grant to this corporation this extraordinary privilege of flying through the country, across the public roads, puffing and screaming and rattling so as to disturb the public quiet, and force everybody to get out of their

way, with the additional privilege of turning the right over to any other person at its pleasure. We are celar that the capital to be invested and the corporation created are to be held responsible for the misuse of the franchise, no matter by whom it is done. The corporation cannot thus escape the obligations implied in its acceptance of the charter. The charter is a contract between the company and the public, and as it is the right of the company to demand that the courts shall protect it against the infringement of its rights by the public, so it is the duty of the courts to protect the public against the misuse of its franchise by the company."

Quotations from other authorities would be cumulative merely. We find the following cases to be instructive and to support the foregoing views: O'Bannion's Estate v. So. R. Co. (Ky.) 110 S. W. 329; Jefferson v. C. & N. W. R. Co., 117 Wis. 549, 94 N. W. 289; I. C. R. Co. v. Kanouse, 39 Ill. 272, 89 Am. Dec. 307; T., P. & W. R. Co. v. Rumbold, 40 Ill. 143; G., C. & S. F. v. Bryant et al., 30 Tex. Civ. App. 4, 66 S. W. 804; Penn. Co. & Penn. R. Co. v. Greso, 79 Ill. App. 128; Smith, Adm'r, v. C. & E. I. R. Co. et al., 163 Ill. App. 476; C., St. L. & N. O. R. Co. v. Rowell, 151 Ky. 313, 151 S. W. 950; C. & W. I. R. Co. v. Newell, 212 Ill. 332, 72 N. E. 416; M., K. & T. R. Co. v. Owens (Tex Civ. App.) 75 S. W. 579; Moylan v. C. R. & I. R. Co., 172 Ill. App. 645; Railway Co. v. Barron, 5 Wall. 90, 18 L. Ed. 591; St. Louis & S. W. R. Co. of Texas v. McGrath (Tex. Civ. App.) 160 S. W. 444.

Under the authorities and as a matter of elementary justice, license to use the track of a railway company may be established by continuous acquiescence on the part of the company, especially when the company, as in the case at bar, had open and notorious notice of the acts of the licensee and adopted no measures to prevent the public from being misled. We hold in such a case that the railway company owes passengers of the licensee the degree of care and protection due to passengers on the trains of the company; that such passengers are not mere licensees; that in such a case the company is liable for negligence of the licensee to the same extent as if there existed express permission or contract to so use the company's track; that a railway company, having obtained valuable franchises from the public, enters into an implied contract with the public that its franchises shall be used by itself, and that it will answer to the public for any abuse of such franchises by third persons consented to or acquiesced in by the railway company.

Whenever a railway company, by long-continued silence and acquiescence, leads the public to believe and to act upon the belief that any person or corporation assuming to exercise its franchises or any portion thereof, with knowledge on the part of the officers and agents of the company, has the consent of such railway company so to do, it may be compelled to respond in damages to third persons, acting upon such belief, in whose favor a cause of action may arise for injury, brought about at the particular time of the injury either by the immediate negligence of the company or by the negligent acts of those in whom the apparent authority existed to exercise the franchise or franchises. Such silence and acquiescence of the company goes to the question of negligence as well as to that of agency.

In this case we do not believe that the railway company can stand by and receive the benefits of having the motor car in question transport passengers and carry freight back and forth to the advantage of the company, and then, in case of negligent injury to a passenger on such motor car, while on the tracks of the company, charge the negligence of the operator of the motor car to the passenger injured. Neither can the company maintain that the mere driving of a spike in the switch by its section foreman, unaccompanied by notice to the owner of the motor car or to the public of a revoking of the license to use the track in question, and which at most prevented the use of the track for only a few days, would operate to revoke such license, especially in so far as the protection of the public is concerned.

The trial court did not materially err in any of the instructions given to the jury. We have examined all of the instructions, and especially those to which objection has been made by the defendant. We have considered carefully all the special instructions requested as urged in defendant's brief. The objection of defendant to instructions given by the court to the jury, and the special instructions offered by the defendants, are based largely upon the theory that the issues in this case were between the defendant and the plaintiff as either a trespasser or bare licensee. We have held that such theory is not the law. The instructions given by the court fairly charge the law of the case in all of its phases. The court did not err in refusing to give any of the special instructions requested. The record is singularly free from error; the case seems to have been fairly tried. There is no evidence of contributory negligence on the part of the

plaintiff; the verdict of the jury does not appear to be the result of passion or prejudice; the amount awarded is not without proportion to the damages reasonably flowing from the injuries received. Whether or not the immediate cause of the damages was the negligence of the employes of the defendant, or negligence in the operation of the motor car, does not matter. The negligence of the one was negligence of the other.

We wish to say that we have read with interest all of the authorities presented by both the plaintiff and defendant, and desire to thank counsel for the exhaustive analysis of the legal questions involved.

The judgment of the lower court should be affirmed.

By the Court: It is so ordered.