## LAKEVIEW, Inc., et al. v. DAVIDSON.

No. 22407.    Oct. 10, 1933.

Rehearing Denied Nov. 14, 1933.

T. G. Chambers, Jr., Kittie C. Sturdevant, and Cheek & McRill, for plaintiffs in error.

Miley, Hoffman, Williams & France, for defendant in error.

RILEY, C. J. Judgment of the trial court in the sum of $8,000 was in favor of Nan LeBron Davidson, plaintiff, and against Lakeview, Inc. It was based upon damages for loss of life by the drowning in Lake Overholser on May 15, 1929, of plaintiff's five year old son, resulting from the sinking of a pleasure boat furnished for hire by defendant to the child's father, who at the same time was drowned. Negligence relied upon as the proximate cause of the damages is the defective condition of the boat so furnished, consisting of inadequate buoyancy, and lack of life preservers as required by ordinance No. 3019, Oklahoma City, as amended, and a contract existing between defendant company and the city of Oklahoma City under and by which the defend-

172

ant operated the concession of boating upon Lake Overholser, the water supply of said city.

It appears that on June 16, 1926, the said city leased to R. E. L. Finley its water reservoir to the extent that lessee was granted for a period of ten years the exclusive right to issue permits to fish, hunt, boat, and maintain amusement devices and cold drink stands upon said reservoir and basin, in accord and subject to the terms of the ordinance above mentioned. On January 19, 1927, Finley assigned his right and interest in the lease to the defendant corporation. The assignment was approved by the city. Thereafter the defendant corporation operated the concession.

Section 9, par. D, of ordinance No. 3019, supra, provides:

"No person shall operate any boat upon such waters not equipped with one life preserver in good condition and of type approved by the water reservoir superintendent, for each passenger therein, and also not equipped with air chambers or chambers of sufficient displacement to insure buoyancy of the craft and passengers in event of capsizing."

The plaintiff alleged the terms and conditions of the contract and the duty imposed upon defendant by virtue of the contract and ordinance in reference to the furnishing to the public for hire, safe and properly equipped boats; that defendant, on May 15, 1929, acting under its lease contract and in pursuance of the ordinance governing, issued to Paul W. Davidson, for use of himself, his son, and William Barnhill, a permit and rented a boat for use upon said lake. That the boat so rented was not equipped with air chambers of sufficient displacement to insure buoyancy, which fact was unknown to Paul W. Davidson and his associates; that defendant failed to furnish said persons or equip said boat with life preservers as required by contract and ordinance; that the boat was thereupon used by said persons, a wind arose, the boat filled with water and, due to its dilapidated, leaky, and obsolete condition, it sank, resulting in the loss of life aforesaid.

The defendant admitted its corporate existence and its assigned lease contract, its operation of the concession as pleaded, otherwise it denied generally the negligence attributed to it. It alleged by way of conclusion that Paul W. Davidson was guilty of contributory negligence, and that his contributory negligence so stated was imputed to the child in his custody.

The answer of defendant assumes, and therefore eliminates from controversy, the relation of the parties and the loss of life.

Due to the fact that the occupants of the boat were drowned and the proximate cause of the loss is to some extent dependent upon circumstantial evidence, the evidence of the only eyewitnesses to the tragedy is material. Sam Huddleston and Lon Huddleston, brothers, were fishing on the dam. The former testified, in substance:

"I saw the deceased Paul Davidson, his youngest son, and Barnhill, a few minutes before their deaths; they were in the boat about 300 feet out in the lake. The boat was propelled by a motor; they were traveling in a westerly direction and a wave swamped the boat and it immediately went down. It went down so fast, it left them sitting there in the middle of the water * * * it just went right down."

Lon Huddleston so testified.

For reversal it is contended, under assignments of error 1, 2, and 12, that the amount of the verdict is excessive. While it is to be remembered in this state that damages for wrongful death are strictly compensatory as distinguished from punitive, yet the law presumes a pecuniary loss to a parent from the death of a child.

Many elements material to gauge the amount of damages to be awarded in the case of wrongful death of an adult cannot be shown in the case of a minor. Typical of these is the actual earning capacity. While, in this record, there is no available exact word of testimony showing the economic or other conditions under which this child was being reared, its prospect for future life without handicaps, or the amount and number of financial contributions it might have otherwise made to the mother, nevertheless the judge and jury apparently were well advised as to the matters from a general view of the facts and circumstances of the case. After all, as stated by the Connecticut court, Gorham v. Cohen, 129 Atl. 523, "to attempt to determine what is the economic value of a life that is ended so shortly after it is begun opens at best an almost illimitable field for the exercise of judgment, and the conclusion of the 12 individual minds which combine to make the verdict, fortified as here by the refusal of the trial judge to interfere, is not easily to be set aside."

As stated by the Washington court, Kranzusch v. Trustee Co., 161 P. 492:

"All the jury could do was to take into consideration the age, health and capacity

of the child, the situation of the parents, and award such damages as to them should seem just."

The reviewing court's duty is aptly stated in such cases by the California court, Gorman v. Sacramento Co., 286 P. 1083:

"Unless the verdict is so plainly and outrageously excessive as to suggest at first blush, passion, prejudice, or corruption on the part of the jury," the reviewing court cannot set it aside.

General knowledge of the jury, in the case of Klusman v. Harper (Mo. App.) 298 S. W. 121, is relied upon to sustain a substantial verdict of a jury because of the great difficulty of procuring evidence as to the loss sustained by the death of a child of tender years. See, also, Ellis v. Ashton & St. Anthony Power Co. (Idaho) 238 P. 517; Spivack v. J. Hahn Bakery Co. (Md.) 214 S. W. 166; Stipetich v. S. S. & Mfg. Co. (Mo. App.) 218 S. W. 965; Flippen Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Williams v. Hines (Mo. App.) 229 S. W. 415; O'Meara v. Haiden (Cal.) 268 P. 334.

Under the circumstances of this case, we are unable to hold the verdict excessive.

Under assignments of error 9 (relating to instruction No. 11) and 10 (relating to requested instructions Nos. 9 and 10), it is urged the measure of damages stated is erroneous.

Instruction No. 11 bases the measure of damages upon such an amount as will compensate the plaintiff for the actual pecuniary loss occasioned to her by the death of her son, limited to the value of the child's services during minority and such contributions as might reasonably have been expected to be received after the child reached majority.

The first paragraph reads:

"You are further instructed that if in this case the jury believe from the evidence that the deceased child * * * was drowned and died subsequent to the death of his father and that such drowning was proximately caused by the defendant's negligence, as alleged in plaintiff's petition. it would then be your duty under the evidence in this case to return a verdict for plaintiff."

It is contended this paragraph of the instruction invades the province of the jury, in that it directs a verdict on account of the wrongful death, even though no damages have been proved. We find no such fault with this portion of the instruction. The law at least presumes nominal damages in the loss of life of a dependent child. It is further contended that error occurred for failure to specifically direct deductions on account of expenses for education and maintenance of the child. The words "actual pecuniary loss," as used in the instructions contemplate such deductions.

It is urged that no account is made of contributory negligence of the father to be imputed to the child. There is no place in this instruction upon the measure of damages for such a statement of law. We hereinafter deal with the question.

It is said that the portion of the instruction relating to "loss of such gifts and contributions toward the comfort, maintenance, and support of the plaintiff it might reasonably be expected she might receive from such child after reaching his majority," constitutes reversible error for that no foundation was laid to show a disposition of the child to make such contributions. This feature of the instruction should have been omitted, but surely men of experience and judgment would not be misled thereby. We find no reversible error contained in the instruction, taken as a whole.

There was no error in refusing requested instruction No. 9. The contended error as to requested instruction No. 10 is abandoned by failure to set it out as provided by rule No. 10 of this court.

Assignment of error is predicated upon a contention of the father's alleged contributory negligence and imputation of it so as to bar recovery by the mother. It involves the refusal of requested instructions Nos. 13, 14, 15, 16, and 17.

Assuming the fact in the absence of any proof, and in the face of mere conclusions pleaded as to the contributory negligence of the father (and recognizing the rule stated in Jenkins v. Davis, 111 Okla. 191, 239 P. 135, and City of Miami v. Finley, 112 Okla. 97, 240 P. 317, that contributory negligence of a parent may bar recovery of that parent for the death of a child, based upon the reason that one may not profit by his own wrong), nevertheless the rule applicable to the case presented is:

"That the contributory negligence of some of the beneficiaries will not defeat the action as to others not guilty of such negligence." 17 C. J. 1245.

"* * * The cases are practically uniform in holding that the negligence of one parent contributing to the death of a child is not to be imputed to the other parent, so as to destroy the right of the latter to recover as a beneficiary of the cause of action for such death, irrespective of whether the action is

by the parent or by the personal representative of the child." 8 R. C. L. 786; Ttlanta & C. Air-Line Ry. Co. v. Gravitt (Ga.) 20 S. E. 550; Pratt Coal & Irion Co. v. Brawby (Ala.) 3 So. 555; Conway v. Monidah Trust (Mont.) 157 P. 178; Hoag v. R. R. Co. (N. Y.) 18 N. E. 648.

While in some cases a wife may sustain such relation to a husband that the negligence of the latter may be imputed to the former, the mere existence of the marital relation does not have that effect in all cases. As the Indiana court well said, Louisville, N. A. & C. R. Co. v. Creek, 130 Ind. 139, 29 N. E. 481:

"In our opinion, there would be no more reason or justice in a rule that would, in cases of this character, inflict upon a wife the consequences of her husband's negligence, solely and alone because of that relationship, than to hold her accountable at the bar of eternal justice for his sins because she was his wife."

Nor do we think mere consent of the mother that the child accompany the father upon a pleasure trip imputes to her negligence of the father. Wolfe v. Lake Erie & W. R. Co. (Ohio) 45 N. E. 708; Love v. Detroit J. & C. R. Co. (Mich.) 135 N. W. 963; Phillips v. Denver City Tramway Co. (Colo.) 128 P. 460; Macdonald v. O'Reilly (Ore.) 78 P. 753.

The common interest or common duty of the parents toward the children will not of itself make one the agent of the other, or responsible for that other's negligence.

As a general rule law, Oklahoma has declined to recognize the doctrine of imputed negligence. Chickasha St. Ry. Co. v. Marshall, 43 Okla. 192, 141 P. 1172; St. L. & S. F. Ry. Co. v. Bell, 58 Okla. 84, 159 P. 336; Midland Valley R. Co. v. Toomer, 62 Okla. 272, 162 P. 1127; A., T. & S. F. Ry. Co. v. Calhoun, 18 Okla. 75, 89 P. 207; Potts v. Union Traction Co. (W. Va.) 83 S. E. 918; Kokesh v. Price (Minn.) 161 N. W. 715; Herrell v. St. L. & S. F. (Mo.) 23 S. W. (2d) 102; City of Howard (Va.) 157 S. E. 735; Carney v. C., R. I. & P. Co. (Mo.) 23 S. W. (2d) 993.

The fact disclosed by the record and accepted by the trial court and jury is that these unfortunate people who lost their lives did not go upon the lake in a storm in a reckless disregard of their safety, but they were caught in a squall, their boat filled with water and it was not equipped with life preservers or air chambers of sufficient buoyancy to afford them an object upon which to cling.

It is contended, under assignment of error No. 9, that error occurred because of the trial court's refusal to instruct that if the accident was caused by act of God, the defendants would not be liable.

There was no sufficient testimony upon which to base such an instruction. The storm was not unusual (C.-M. 400). The general wind movements in the vicinity at the time were approximately 12 miles per hour. The defense of an act of God being the proximate and sole cause of the loss and damage was not pleaded. Sand Springs Ry. Co. v. Baldridge, 60 Okla. 102, 159 P. 487. Whereas, to be available, such a special defense in actions based on negligence must be pleaded. The contention is without merit.

It is urged under assignment No. 6 that the court erred in allowing the introduction of evidence concerning other accidents.

More specifically the evidence to which objection is made concerned the condition of the boats rented by defendant at the time and prior to the accident in question. The necessity of this character of evidence is apparent when it is observed that for a time there was disagreement of the parties as to whether the particular boat used by the deceased persons was recovered from the bottom of the lake. As a general rule, evidence as to similar accidents is not admissible because the issue is collateral, and being collateral, there would be no end to the lawsuit at bar if every collateral issue was exhausted. Moreover, the facts in the principal cause would be confused, but as in the instant case, where the vital issue is the condition of a particular boat used, and that instrumentality is not freely available or is for a time concealed by the party sought to be charged with responsibility for its condition, the general aspect and condition and management of the concession ought to be known as a circumstance throwing light upon the true condition of the instrumentality furnished by defendant and used by the deceased persons. This evidence tends to show that the boat furnished deceased was not equipped with life preservers, and at most that at and shortly before the time of the accident in question the life preservers were scattered and kept apart from boats rented.

The motor used upon the boat was furnished by the deceased Davidson. Error is urged because of admission of evidence concerning repair of it.

This evidence was admitted, not because of any contention concerning defects of the motor, but under plaintiff's theory that the particular boat in question had been raised

from the bottom of the lake, repaired, and put in service by the defendant; that defendant had for a time concealed the boat in question from plaintiff so as to avoid examination of it. This evidence tended to show that the motor was fastened to the boat with clamps easily bent, that the clamps were not bent and consequently the motor had been taken off the boat by hand and not pulled off by grappling hooks in recovery of the motor alone. There was no objection to this evidence. Its admission was not error.

The character of the place of the accident is one of the subjects of inquiry pertinent to both parties. 2 Jones, Com. on Evidence (2d Ed.) 1265; Dist. of Columbia v. Armes, 107 U. S. 519, 27 L. Ed. 618; City of Topeka v. Sherwood (Kan.) 18 P. 933; Mo. Pac. Ry. Co. v. Neiswanger (Kan.) 21 P. 582; Cunningham v. Clay Twp. (Kan.) 76 P. 907; Lombar v. Village of East Tawas (Mich.) 48 N. W. 947; City of Bloomington v. Legg (Ill.) 37 N. E. 696; Smith v. City of Seattle (Wash.) 74 P. 674; Central Amusement Co. v. Van Nostran (Ind. App.) 154 N. E. 390.

This evidence was admissible to show the physical effect caused by filling a metal boat with water, and that, under such conditions, when the boat is not equipped with air chambers of sufficient buoyance, it will sink.

Evidence as to repairs subsequent to an accident is treated in St. L.-S. F. Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, wherein it is said:

"While evidence of this character is not competent for the purpose of showing negligence, it is not necessarily incompetent in every particular. 29 Cyc. pp. 618, 619.

" 'In showing conditions prior to repair, an exception to the rule excluding evidence of changes, repairs made, or precautions taken after the injury exists where the fact that the repair or change has been made is brought out in showing the condition existing at the time of the accident'." See 45 C. J. 1232.

Moreover, the rule invoked by defendant applies to repairs of the instrumentality which caused the accident. This instrumentality was the boat used by deceased, and while we think the court permitted the collateral issues to go far afield, we find no reversible error in this ruling of the court, and some necessity for the evidence under the peculiar issues as to negligence presented.

Error is sought to be shown by the introduction in evidence of the lease and concession contract under which defendant operated, wherein a clause was contained requiring defendant to carry liability insurance. But this clause merely requires the defendant to carry indemnifying insurance to protect the city. The city was not and is not a party to the action. The insurance feature was not introduced merely to show the fact of it, but evidence of it was incidental to proof of a material part of plaintiff's case. It was by virtue of this lease contract that responsibility and liability could be imposed upon defendant.

The correct rule is stated in annotations to 56 A. L. R. 1418:

"It may be stated that it is not open to question that liability insurance may be the subject of evidence, or the object of interrogations, if the fact of insurance bears upon an issue in the case, though such question is ordinarily inadmissible. In other words, it is competent to show that defendant carries liability insurance, where to do so tends to prove some material issue properly in the case; under such circumstances, the mere fact that it is not admissible to prove another matter does not render it incompetent; the determination of the admissibility of any evidence depends upon whether it tends to prove an issue—whether it is relevant or material; if it is, it cannot be excluded on the ground that it may tend to prejudice the defendant because it tends to show that he carried liability insurance."

The mere fact that defendant in pleadings admitted its position as exclusive concessionaire of boating privileges on the lake did not render admission of the evidence objectionable.

We find no error in this evidence.

Assignments of error 3, 5, 7, and 8 relate to alleged failure of plaintiff to make out a prima facie case of neglect of duty owing by defendant to the deceased child.

Slight reference to the city ordinance and contract between the defendant and the city, shown in the record, is sufficient to answer this contention.

The contract, in part, provides:

"The lessee agrees to use diligence in preserving law and order on and about the said premises * * * and to enforce City Ordinance 3019."

The ordinance mentioned requires that boats operated, be equipped with life preservers and air chambers of sufficient displacement to insure buoyancy of the craft and passengers in event of capsizing. But aside from these duties imposed by ordinance

and contract, it is elemental that one who maintains a public resort or place of amusement is required to keep the premises and appliances furnished in connection with its use, in reasonably safe condition. 45 C. J. 816, 858.

The case of City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462, is not similar to the facts presented by the cause at bar. That case did not concern defective instrumentalities furnished.

The next contention concerns instructions Nos. 7 and 9 (assignment of error No. 10).

By these instructions the court stated the duty defendant owed the deceased person under the city ordinance heretofore mentioned and the lease contract. It is contended that said ordinance is invalid for the said lake is located beyond the territorial limits of said city and the city does not possess power to give extraterritorial effect to its police power.

It is true that ordinances of a municipality do not extend beyond the geographical limits of the municipality unless a specific grant of power to enact such ordinance is granted by the laws of the state.

Section 6070, O. S. 1931, grants such authority. After providing for acquisition of land within or without the corporate limits of such municipality for waterworks purposes, provision is made by the statute for policing the same. Section 6005, O. S. 1931, contemplates the use of moneys derived from special fund "for the purpose of policing said lakes and grounds. * * *" In 5 Words and Phrases (Third Series) p. 1089, the word "police" is said to denote superintendence by magistrates, which has principally for its object the maintenance of public tranquility among the citizens. The first significance of the word relates to measures which are adopted to keep order, the laws and ordinances on cleanliness, health, the markets, etc. The second has for its object to procure to the authorities the means of detecting even the smallest attempts to commit crime, in order that the guilty may be arrested before their plans are carried into execution and delivered over to the justice of the country. The third comprehends the laws, ordinances, and other measures which require the citizens to exercise their rights in a particular form. State v. Frazier, 39 N. D. 430, 167 N. W. 510. The term includes regulations for the safety of the public and is not limited to sanitary or health regulations.

Thus we find a specific grant of authority to sustain the ordinance in question. In fact defendant relied upon the validity of the ordinance in question in the trial court, as disclosed by its requested instructions Nos. 15 and 16, and now on appeal its complete change of theory will not be countenanced. Wallace v. Duke, 44 Okla. 124, 142 P. 308.

It is lastly contended that plaintiff wholly failed to prove any breach of duty or acts of negligence on the part of defendant, and that the motion of defendant for a directed verdict should have been sustained.

This contended error is predicated upon the theory that plaintiff produced no evidence to sustain a finding of negligence upon defendant's part. The assertion is that negligence in this case rests upon circumstances and that such circumstances rest upon inference rather than proved facts. Schaff v. Ferry, 105 Okla. 259, 232 P. 407; M. V. R. Co. v. Rupe, 87 Okla. 286, 210 P. 1038; Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P. 974; St. L. & S. F. Ry. Co. v. Mobley, 70 Okla. 297, 174 P. 510; Star v. Brumley, 129 Okla. 134, 263 P. 1086.

The rule is:

"In an action in damages for wrongful death, the negligence alleged may be established by circumstantial evidence, but the circumstances must be proved, and not themselves presumed." Schaff v. Ferry, supra.

A sufficient answer to the contention urged is that herein the circumstances upon which the conclusion of negligence rests is an established fact. The duty owing to deceased from defendant was to provide a boat with sufficient air chambers to insure buoyancy of the boat and occupants in event of capsizing. The direct positive evidence is that when the boat was filled with water it promptly sank and the occupants drowned without aid of any floating object, either a craft or life preservers. The reasonable conclusion is that the boat was not properly equipped, and the conclusion rests upon a proved fact. Any other conclusion, such as suggested by defendant, that the air chambers were previously destroyed or abandoned by deceased, would rest upon inference as objected to by them.

Moreover, defendant's own witness, Tim Edwards, testified (C.-M. 295) that only one air chamber was intact when the boat was afterward recovered, but that the air chamber under the front seat was punctured and was leaking and the air chamber under the third seat was missing and gone.

The evidence, in our opinion, is sufficient to support the judgment.

The judgment is affirmed.

CULLISON, ANDREWS, McNEILL, BUSBY, and WELCH, JJ., concur. SWINDALL, J., not participating. OSBORN and BAYLESS, JJ., absent.