### GLOBE OIL & REFINING CO. et al. v. JONES (two cases).

Nos. 23120, 23121. Oct. 30, 1934.

Rehearing Denied Feb. 5, 1935.

Application for Leave to File Second Petition for Rehearing Denied March 5, 1935.

Thurman, Bowman & Thurman (Lee B. Thompson, of counsel), for plaintiffs in error.

J. M. Springer, D. P. Hervey, and S. A. Horton, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the lower court.

On the 9th day of September, 1930, the plaintiff, Thomas Jones, a young man about 19 years of age, while returning from a practice game of football in the city of Cushing, Okla., was struck by an automobile propelled by L. P. Leonard, who at that time was in the employ of the Globe Oil & Refining Company, and sustained serious injuries, on account of which he, by and through his father, J. E. Jones, as next friend, brought suit for damages. His father, J. E. Jones, brought an action to recover compensatory damages occasioned by reason of the injury to his son. Upon trial the two causes were consolidated, and they are consolidated in this court.

The petition in each case alleged that the defendant Leonard, while engaged in the service of the oil company, was negligent in propelling the motor car along the streets of Cushing, and, that on account of such negligence, the boy sustained the injuries complained of. The petitions recite that the defendant Leonard was driving at an unlawful rate of speed, in reckless disregard of the rights of pedestrians crossing the highway, and that such defendant Leonard had defective eyesight, and was afflicted with a bodily ailment which caused him to be

34

nervous and unable to properly control the car while driving.

The defendants filed their separate answers, generally denying the allegations in the petitions, the defendant Leonard pleading unavoidable accident and contributory negligence on the part of the injured boy, while the defendant oil company filed a similar answer, and, in addition thereto, pleaded that the defendant Leonard was not, at the time of the accident, engaged in the performance of any duties on behalf of the oil company that would constitute the defendant Leonard its agent.

In due time, the issues were joined and trial had, resulting in a verdict and judgment for each of the plaintiffs, the minor in the sum of $8,000, the father in the sum of $2,000.

From the judgments so entered in the consolidated cases, appeal has been taken to this court.

Numerous assignments of error are set forth in the record, but the view which we take makes it unnecessary to deal with the respective assignments, for we are of the opinion that the conduct of the plaintiffs and their attorney in bringing to the attention of the jury the fact that the defendant refining company carried insurance constitutes reversible error.

After the jury had been selected, impaneled, and sworn, and during the trial of the cause, it appeared from the evidence that the father, J. E. Jones, had three conversations with the defendant Leonard, primarily for the purpose of ascertaining whether or not he, Leonard, at the time of the accident, was engaged in service on behalf of the refining company. The last effort made to obtain this information was prompted by the attorney representing the plaintiffs. J. E. Jones testified that on two occasions, at the request of his attorney, he interviewed Leonard and reported back the result of the interviews. Upon denial of certain parts of the conversation by the defendant Leonard, the father and the witness who accompanied him (E. E. Moler) testified to the conversation had, and the record discloses the following:

"Q. State what you heard said. A. Mr. Jones, about the first of the conversation, says 'Mr. Leonard, the insurance people' or whatever they were, 'state that you were just driving around on your own account for your own pleasure when the accident happened'. Did you want this conversation like it was? Q. Just state what was said. By

Mr. Thurman: At this time, the witness having answered, the defendants object to the answer and move that it be stricken, and on account of the prejudicial matters stated by the witness, the defendants and each of them move the court to declare a mistrial and discharge the jury. By the Court: Well, I know the point you are driving at; but I don't see it just that way, and I don't think the witness meant to use that term. By Mr. Thurman: The damage has been done, just the same. By the Court: Are you determining this matter, or me? By Mr. Thurman: Well, I beg your Honor's pardon. By the Court: It is granted. The court will strike from the record the answer that was given and instruct the jury at this time not to consider the answer as given for any purpose in this case. * * * Q. Can't you tell us just what it was they said there at that time? A. Yes, sir. Q. That is what I want you to do. A. Mr. Jones says 'The insurance company' if I remember right, 'claims that you were out riding around on your own account and wasn't on any business for the company whatever.' And he says 'The hell they did. By-God I was on company business.' By Mr. Thurman: Comes now the defendants and each of them again and object to the answer of the witness and moves the court to strike it, and further moves the court on account of the prejudicial matter referred to in the witness's answer to declare a mistrial and discharge the jury. By the Court: Overruled. By Mr. Thurman: Each defendant excepts. Q. (By plaintiffs' attorney) Did he say insurance company or refining company, which was it he said? By Mr. Thurman: The defendants and each of them object to the question. By the Court: We will put an objection in the record to everything that goes on the rest of the trial, if you want it. Overruled. By Mr. Thurman: Well, I am just trying to complete the record. I beg your pardon. By the Court: I know what you are trying. By Mr. Thurman: We except. A. Well, I can't say that, I might have called that wrong, because I supposed it was insurance, and they was taking care of it. Q. I am asking you what the conversation was, and leave that out if there wasn't anything said about it. By the Court: They are not asking you for suppositions, they are asking you for conversations. Nothing else. By Mr. Thurman: The defendants renew their motion to declare a mistrial and discharge the jury. By the Court: Overruled. I don't know anything about this fellow, bring him in and have him blurt out something, and have your company have this court to go and kick this out of court. I don't know whether it is you or not. By Mr. Thurman: We except. By the Court: If things like that take place, you could never have a suit against corporations in courts. By Mr. Thurman: We except."

From the above, it is self-evident that the

attorney for the plaintiffs knew or should have known what the testimony of the witness would disclose. It was the purpose of the plaintiff primarily to impeach the testimony of the defendant Leonard by showing a state of facts contrary to that to which he had previously testified when called as a witness for the plaintiffs. The plaintiffs assumed the responsibility for the answers given by the witness in respect to such conversation, and notwithstanding the direction of the trial court that the jury disregard the reference made to the insurance feature of the case, and the fact that an insurance company had filed the answer, yet, immediately thereafter, the plaintiffs, through their attorney, caused the witness to repeat the conversation, again indicating that the answer had been filed by the insurance company. The statement of necessity carried the inference that the suit was being defended by an insurance company, and when timely objection was made to such improper testimony, the record discloses that the court not only overruled the objection, but did not again admonish the jury to disregard the answer.

From the state of the record, it is not apparent that the plaintiffs were surprised at the testimony of the witness, nor do we believe that the plaintiffs did anything to cure the manifest error in bringing out such conversation. The plaintiffs must have known that, in all probability, the same answer would be given by the witness when he was requested to repeat the conversation, as had been previously given by him. It is apparent from the record that the plaintiff did nothing to withdraw this statement from the jury of their own volition, and, as a result, it is a fair inference from the record in this case, that the plaintiffs obtained the advantage of an improper prejudicial statement made by the witness.

We do not believe the question of insurance should have been brought to the attention of the jury, but where it has been so brought before the jury, the court should, of its own volition, exclude the same so far as it is possible so to do, and when it is again brought to the attention of the jury by plaintiffs' counsel, and the court does not exclude the same, we are of the opinion that such conduct constitutes error and misconduct during the trial of the case.

The great weight of authority sustains the view that we have taken here.

In the case of Lakeview, Inc., et al. v. Davidson, 166 Okla. 171, 26 P. (2d) 760, the fact of insurance being carried by the defendant was injected into the case incidentally as part of a written agreement which formed the basis of the right of plaintiff to recover in that case, and this court held that no reversible error arose by reason of the introduction of the written lease. A somewhat contrary view to that which we take is held in the case of Letcher v. Skiver, 99 Okla. 269, 226 P. 1029.

It is evident in this case that both the attorney for the plaintiffs and the court permitted the jury to have the benefit of the improper testimony with reference to the cause being defended by the insurance company. This was not an issue in the case, and should not have been injected into it, and inasmuch as it was, as we have previously stated, it constitutes such error in the trial of the cause as to necessitate a reversal.

This question is squarely presented to the court by proper assignments of error.

Numerous other assignments of error are presented by this appeal, but, in view of the conclusion reached, we deem it unnecessary to pass on the other errors assigned by the defendants, for upon a retrial of this cause, the parties will undoubtedly be enabled to present the case according to proper rules of law applicable thereto.

The judgment rendered by the trial court in each of the cases herein consolidated is reversed, and the cause remanded for new trial.

The Supreme Court acknowledges the aid of Attorneys G. A. Paul, Malcolm McKenzie, and A. L. Jeffrey in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Paul and approved by Mr. McKenzie and Mr. Jeffrey, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion, as modified, was adopted.

---

### On Rehearing.

McNEILL, C. J. (dissenting). I am unable to agree with the conclusion which has been announced by the majority opinion. The accident in question occurred on a public highway, the center of which constitutes the outside limits of the city of Cushing.

It was a bad accident, and it is conceded that plaintiff has suffered intensely and has sustained permanent injuries.

In my opinion every fact points to the liability of the defendant L. P. Leonard. If said defendant was acting as the agent of the Globe Oil & Refining Company at the time of the accident, then the refining company was also liable, unless it be that the incidental disclosure tending to show that the refining company may have been protected by a policy of insurance, having been injected into the trial, was prejudicial to the rights of the defendants and influenced the verdict of the jury.

Plaintiff cannot recover from the refining company unless the defendant Leonard was performing some duty for his master at the time of the accident. This was a vital question of fact for determination. The defendant Leonard was called as a witness on behalf of the plaintiff, and testified as follows:

"Q. For what purpose had you gone to the supply house? A. Just for to loaf awhile. I had no company business there whatever."

The record supports the view that this answer came as a surprise to counsel for plaintiff, because, prior to the time of the trial, he had been advised that Leonard had specifically admitted that at the time of the accident he was on a mission of his company. For the purpose of impeachment, the defendant Leonard was then interrogated as to whether he had made a statement before J. E. Jones, the father of plaintiff, and also before E. E. Moler, at the refinery at Cushing, after the answer had been filed in this case by the refining company, to the effect that he was returning from a supply house at the time of the accident, in the performance of his duties for the refining company, and that this information had been sought from him on account of the fact that the refining company had alleged in its answer that he was not engaged in any duties or business of the refining company at the time of the accident in question. The witness denied that he had made any such statement.

On account of this denial on the part of the defendant Leonard, counsel for plaintiff thereafter called J. E. Jones, who testified that Leonard had informed him that he was on business for the company at the time of the accident. Jones also testified that he had reported this conversation which he had with Leonard to counsel for plaintiff,

The witness Moler was also called in behalf of plaintiff, and he testified to a similar conversation which he heard between Jones and Leonard, as follows:

"Q. State what you heard said. A. Mr. Jones, about the first of the conversation, says 'Mr. Leonard the insurance people' or whatever they were, 'state that you were just driving around on your own account for your own pleasure when that accident happened.' Did you want this conversation like it was?"

This answer was struck from the record by the court, and the jury was instructed not to consider the same for any purpose. The witness was then asked to state what was said at that time. The following answer was given:

"Mr. Jones says 'The insurance company,' if I remember right, 'claims that you were out riding around on your own account and wasn't on any business for the company whatever.' And he says 'The hell they did, By-God I was on company business'."

Counsel for defendants objected to this answer, and thereupon moved the court to strike the same from the record, and also moved the court to declare a mistrial and discharge the jury. The court overruled those motions. Thereafter the following question was asked:

"Q. Did he say insurance company or refining company, which was it, he said?"

Counsel for defendants objected to this question. The record shows as follows:

"A. Well, I can't say that, I might have called that wrong, because I supposed it was insurance, and they was taking care of it. Q. I am asking you what the conversation was, and leave that out if there wasn't anything said about it. By the Court: They are not asking you for suppositions, they are asking you for conversations. Nothing else. By Mr. Thurman: The defendants renew their motion to declare a mistrial and discharge the jury."

It is to be observed that counsel for defendants made no request of the court to strike this testimony. The witness specifically stated that Leonard might have said "insurance company" instead of the "refining company," because the witness supposed that the insurance company was taking care of the litigation. In the final analysis there was no statement of fact that any one had said that any insurance company was taking care of the litigation.

Plaintiff had the right to make the lawful inquiry in question, in the absence of bad faith, and to introduce any competent evidence upon any issue arising during the trial against any defendant in the case. The questions relating to impeaching the witness

Leonard as to his former statements were clearly competent and were directed to a valid and highly controversial issue, to wit, as to whether the defendant Leonard was on an errand or mission of the Globe Oil & Refining Company at the time of the accident. The weight and credibility of a witness in a law action are peculiarly within the province of the jury.

It appears that well-reasoned authorities, in considering the question of the negligence of the driver in automobile cases, support the view that when a material allegation in a petition·or an answer is at issue, evidence may be offered to substantiate such an allegation, and that such evidence is competent and admissible, even though as an incident to its production it is disclosed that the defendant is protected by insurance. See 56 A. L. R. 1448; 74 A. L. R. 854; Southern Pacific Co. v. Schoer (C. C. A.) 114 Fed. 466, 57 L. R. A. 707; Steinman v. Brownfield (Mo. App.) 18 S. W. (2d) 528; Fletcher v. Saunders, 132 Ore. 67, 284 P. 276; Dermer v. Pistoresi et al. (Cal.) 293 P. 78 (cross-examination to lay foundation for impeachment); Knutzen Motor Trucking Co. v. Steiner, 31 Ohio App. 46, 166 N. E. 243; Jimmie Guest Motor Co. v. Olcott (Tex. Civ. App.) 26 S. W. (2d) 373; O'Connor v. Sioux Falls Motor Co. (S. D.) 232 N. W. 904; Fleming v. Flick et al. (Cal.) 35 P. (2d) 210; Rowe v. Rennick (Cal.) 297 P. 603; Elsey v. Domecq et al. (Cal.) 299 P. 794 (re.—Question to impeach witness regarding former statement); 4 Blashfield, Cyc. of Automobile Law, sec. 19, p. 1521; Cook-O'Brien Co. v. Crawford, 26 F. (2d) 574.

In view of the foregoing authorities, it seems to me that too much technical importance has become attached to the disclosure of insurance in ordinary actions of tort which relate to the negligent driving of an automobile. There probably was a time in the early history of the operation of automobiles that a reference or an inference to the effect that the defendant might be protected by a policy of insurance would have some tendency towards prejudicially influencing the verdict of the jury. But it is almost common knowledge today, which is shared in by the average juror, that many operators of automobiles are protected by insurance policies. Jurors are sworn to try the case in accordance with the facts and the law applicable to those facts under the instructions of the trial court, and it seems to me that there is no sound reason why the average juror cannot perform to the full extent his obligatory and sworn duty in a case of this character. See Rinklin v. Acker, 109 N. Y. S. 125; Dermer v. Pistoresi et al., supra, p. 79 of 293 P.

In this kind of case there can be no prejudice in the verdict of the jury except where the question of negligence is closely balanced or doubtful, and it can have no place in the mistrial of such a cause unless it appears that but for the reference a verdict might have been rendered equally as well for the plaintiff as for the defendant. Fleming v. Flick et al. (Cal.) 35 P. (2d) 210, 218.

In the instant case, in my opinion, the evidence touching the question of negligence as to the defendant Leonard is not remotely close. There is no intimation that the damages are excessive or disproportionate to the injuries sustained. As I view this record, there was some seeming color of abruptness in the course of the trial in the colloquy between the court and counsel for the defendants, but the error complained of in this case relative to the disclosure of insurance is entirely too technical to justify the judgment of a reversal.

The rule announced in the fifth paragraph of the syllabus in the case of Lakeview, Inc., et al. v. Davidson, 166 Okla. 171, 26 P. (2d) 760, is the proper rule to apply in this case. The syllabus in the case of Yoast v. Sims, 122 Okla. 200, 253 P. 504, should have no application in this case. In that case the majority opinion arrives at the correct conclusion, but the syllabus, in my opinion, does not properly reflect the law in that case.

As to the Globe Oil & Refining Company, the merits of the entire controversy centered upon the question of whether the defendant Leonard was performing any duty for said company at the time of the unfortunate accident. The impeachment questions were legitimate examinations, and it appears to me that the trial court did not abuse its discretion in refusing to grant a new trial. For these reasons, I respectfully dissent.

I am authorized to announce that Mr. Vice Chief Justice OSBORN concurs in this dissent.