L. W. SAMPLE and Wesley Sample, Plaintiffs in Error,

v.

H. M. CAMPBELL and Faye Campbell, Defendants in Error.

No. 37205.

Supreme Court of Oklahoma.

Jan. 8, 1957.

Dudley, Duvall & Dudley, by Paul Dudley, Oklahoma City, for plaintiffs in error.

Tom Hieronymus, Woodward, Charles R. Nesbitt, Oklahoma City, for defendants in error.

HALLEY, Justice.

This is an action by H. M. Campbell and wife, Faye Campbell, against L. W. Sample and his minor son, Wesley Sample, to recover damages for the pecuniary loss sustained by them through the death of their minor son, Billie Maurice Campbell, fourteen years of age, alleged to have been caused by the negligence of the defendants, L. W. Sample and his minor son, Wesley Sample, on September 13, 1954, on a country road a little more than a mile southeast of Buffalo, Oklahoma, while the deceased was riding as a guest in a car driven by Wesley Sample, a minor without a driver's license and with the consent of his father, L. W. Sample, who owned the car. The parties will be referred to by name, or as plaintiffs and defendants as they appeared in the trial court.

Wesley Sample and Billie Maurice Campbell were friends and on the date above mentioned were attending a county fair at Buffalo. After an evening meal they got in the car being driven by Wesley Sample, a minor fifteen years of age, and belonging to his father, along with another friend, Don Yauck, and started for a casual drive around Buffalo. After driving about a mile south they turned east on a dirt road never driven over before by Wesley Sample. Within a mile this road passed over a hill

and the road made a sharp turn to the south. In an effort to make this turn the car went out of control, skidded about sixty feet, then struck an embankment on which it skidded some distance and finally overturned, throwing Billie Maurice Campbell a distance of ninety feet and killing him instantly. The driver and other guest were badly shaken up but soon recovered. There were no warning signs of the sharp turn in the road to the south and it was about 7:30 P.M. and dark or about dark. It was not disputed that Wesley Sample was only fifteen years of age and had no driver's license, and that his father gave his consent for the boy to drive the car.

The plaintiffs alleged that Wesley Sample was driving his father's car with his consent, and that the driver of the car was negligent in failing to keep the car under control, in driving at an excessive speed of about sixty miles per hour, which made it impossible to stop within the assured clear distance ahead, and in driving without a driver's license. It was also alleged that Wesley Sample was a reckless driver, which was known by his father.

The deceased Campbell boy had a life expectancy of 46.16 years, his father 26 years and his mother 28.90 years.

The defendants denied negligence and alleged that the deceased was guilty of negligence, as was his father in allowing his son to ride in defendants' car when they knew it was being operated by an unauthorized driver, and also alleged that the accident was unavoidable.

The jury awarded the plaintiffs $10,000 for their loss of services of their son during his minority, but nothing was allowed after he reached his majority. The defendants have appealed and rely upon only three propositions which we will consider in the order named. No. 1 is as follows:

"The trial court's Instruction No. 15 on the measure of damages is er-

roneous, because it failed to advise the jury to deduct the reasonable charges and upkeep of said minor, such as food, clothing, medical expenses, schooling, and the value of the parents' services while rearing said minor during minority."

Instruction No. 15 given by the court and complained of and requested Instruction No. 13 refused by the court are substantially the same except that requested Instruction No. 13 contains a clause not found in the instruction given. The requested instruction tells the jury that should it find for the plaintiffs, it should, in fixing the amount of plaintiffs' recovery, fix such recovery in a sum which would reasonably compensate plaintiffs as parents of the deceased for actual pecuniary loss which plaintiffs have sustained by reason of the death of Billie Maurice Campbell, "* * * less the expense of his upkeep and the value of his parents' services while rearing him and until his majority."

Was it necessary to include the provision just quoted in the instructions as to the amount of plaintiffs' possible recovery? The defendants contend that it is and that its omission constitutes error. The following and other cases are cited in support of this contention.

In Foster v. Higginbotham, 186 Okl. 276, 97 P.2d 63, the rule is announced in the second paragraph of the syllabus:

"In an action by a parent for the wrongful death of his minor child, where there is evidence as to the age of the child, its physical condition, its general disposition toward the parent, and the dependent condition of the latter, an instruction limiting recovery to the actual pecuniary loss suffered by the parent for the anticipated loss of services and contribution on the part of the child both before and after its majority, and permitting the jury, under proper guidance as to deductions for support of the child, to

calculate the damages upon the basis of their own knowledge and experience concerning similar children under such circumstances, does not permit of undue speculation and conjecture, and is not erroneous."

In the earlier case of Shawnee Gas & Electric Co. v. Motesenbocker, 41 Okl. 454, 138 P. 790, it is said in the seventh paragraph of the syllabus:

"In an action by a parent for the loss of the services of a minor child, the damage to the parent is limited to such as will compensate him for the loss of the child's services to the time of his majority, the reasonable amounts necessarily expended in the treatment and care of the child, and the value of the parent's services while nursing the child, and the jury may consider that with age, growth, and experience the value of the child's services would increase, although they cannot consider that the child might, if not injured, engage in any particular calling."

Again in Missouri, K. & T. Ry. Co. v. Horton, 28 Okl. 815, 119 P. 233, it was held to the same effect.

In Fike v. Peters, 175 Okl. 334, 52 P.2d 700, 704, the court approved an instruction complained of which expressly advised the jury that in fixing the value of the child's services they should consider certain elements in arriving at what the services of the deceased child would amount to and added " ' * * * from this sum you will deduct the reasonable charges and up-keep of said child, such as food, clothing, medical expenses, schooling, etc. and the value of the parents' services while rearing said child; * * *.' "

In the recent case of Stanolind Oil & Gas Co. v. Jamison, 204 Okl. 93, 227 P.2d 404, 23 A.L.R.2d 1141, an instruction was approved which directed the jury to deduct reasonable charges for the upkeep of the deceased child.

Again in Parkhill Trucking Co. v. Hopper, 208 Okl. 429, 256 P.2d 810, it was held that the son, for whose death the mother sought damages, was over twenty years of age when killed and had been contributing to his mother's support and had been away from home practically all of the time and assisting his mother, who was a widow, and under such facts the court had no reason to instruct the jury that from the pecuniary loss suffered by the mother in his death they should deduct the cost of his upkeep by his mother.

In the case before us the son had lived at home and his food and clothing expenses were paid by his parents. These facts made the cost of upkeep an important element for consideration by the jury in arriving at the pecuniary loss suffered by his parents by his death at the age of fourteen. The evidence showed that he made fair grades in school, worked on the farm, did repairs about the home and helped with the housework, and during the remaining years of his minority, he would doubtless have rendered even more valuable services to his parents.

However, our attention is called to decisions of this Court holding that it is not error to omit from instructions the requirement that the jury deduct the cost of upkeep of the child on the theory that the words "actual pecuniary loss" contemplate such deductions. In the case of Lakeview, Inc., v. Davidson, 166 Okl. 171, 26 P.2d 760, 762, it is said in the body of the opinion:

" * * * It is further contended that error occurred for failure to specifically direct deductions on account of expenses for education and maintenance of the child. The words 'actual pecuniary loss' as used in the instruction contemplate such deductions."

In Helmerick & Payne, Inc., v. Green, 183 Okl. 164, 80 P.2d 573, it is said in the third paragraph of the syllabus:

"It is not error to refuse to give an instruction that correctly states the law, if substantially the same instruction is embodied in the instructions of the court to the jury, and the instructions, as a whole, correctly state the law applicable to the facts in the case."

We think that the longer instruction which tells the jury that in arriving at the amount of pecuniary loss suffered it should deduct the cost of maintaining the minor until majority is preferable. But in view of decisions holding that the cost of upkeep of the minor is presumed to be considered by the jury in fixing the amount of pecuniary loss to the parents, we do not feel that the instruction given constitutes reversible error. It is to be presumed that the jury must have considered that the minor child caused some expense to the parents where the undisputed evidence clearly put before the jury that the parents had expanded and would necessarily continue to spend considerable sums in sustaining their minor son.

It is claimed that the verdict of $10,000 is excessive. The evidence is clear that deceased son was a good, average boy and made fair grades in school, was an energetic worker on the farm, made repairs about the home and helped with the housework. He was active in 4H and FFA, and had loaned money to his father which he had earned in raising a calf given to him by his father, and had earned $25 to $35 by working for others.

The pecuniary loss to the parents by the death of a minor child is very difficult to fix with any degree of certainty. The jury was properly instructed that the parents could not recover for mental pain and sorrow resulting from the death of their son. We are cited a number of cases where this Court has upheld judgments for approximately the same amount as was awarded here. It is well known that this Court will take judicial notice of the decline of the purchasing power of the dollar in recent years. This must be considered in passing upon the question of whether a verdict is excessive. In Hale-Halsell Co. v. Webb, 184 Okl. 589, 89 P.2d 273, 274, it is said in the body of the opinion:

"The next contention is that the verdict is excessive. In considering the excessiveness of verdicts, the duty of the reviewing court is to let the verdict stand 'unless the verdict is so plainly and outrageously excessive as to suggest at first blush passion, prejudice or corruption on the part of the jury.' Lakeview, Inc., v. Davidson, 1933, 166 Okl. 171, 26 P.2d 760, 762. The amount of damages properly recoverable in this type of case is necessarily indefinite because it is determined by so many factors, and we hesitate to supplant the jury's determination of the amount with our judgment thereon. The factors vary in each case and, in determining whether a verdict is excessive, each case must be decided on its own facts and circumstances. Sand Springs R. Co. v. McGrew, 1923, 92 Okl. 262, 219 P. 111; Oklahoma City v. Hayden, 1934, 169 Okl. 502, 37 P.2d 642. * * *"

In view of the facts before us and the fact that the jury only allowed damages suffered during the minority, we do not feel that the amount of the judgment is excessive.

It is complained that the court permitted one individual photograph of the deceased alone and another picture as a member of a basketball team to be introduced in evidence. No case is cited in support of the contention that such evidence was prejudicial. Other evidence was in the record to the effect that the son was a healthy, energetic and industrious boy of good habits, lovable and helpful to his parents. Plaintiffs claim that the pictures were competent evidence to corroborate other evidence in the record.

While the pictures may have aroused sympathy for the parents, the jury was clearly instructed that they could not award any sum for mental pain and suffering on the part of the parents. We do not think that the introduction of the pictures constituted such error as to justify a reversal.

The judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.